Winter & Hirsch, Inc., Plaintiff-Appellee, v. Dominic Passarelli and Antoinette Passarelli, Defendants-Appellants.

Gen. No. 53,205.

First District, Second Division.

March 10, 1970.

Rehearing denied May 8, 1970.

BURKE, J., dissenting.

Scariano and Gubbins, of Chicago Heights, for appellants.

Benjamin J. Schultz, of Chicago, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order denying a motion to vacate a judgment by confession. The judgment was entered against the defendants, Dominic and Antoinette Passarelli, on behalf of the plaintiff, Winter & Hirsch, Inc. Defendants made a motion before the trial court to vacate the judgment; the motion was denied, and from that order of the trial court this appeal is taken. The questions before this court are: 1) whether the loan entered into between the parties provided for a usurious rate of interest; and 2) whether the plaintiff was a holder in due course of the note evidencing the loan in question.

The defendants first contacted the Equitable Mortgage & Investment Corporation (hereafter referred to as Equitable), attempting to secure a loan. Equitable is a brokerage firm which makes its profits by selling loan contracts to finance companies at a discount. In this case Equitable was to lend the defendants $10,000. Of the several provisions in the note, we will consider the following: 1) a provision whereby the defendants agreed "for value received" to repay a total of $16,260 over a period of 60 monthly payments of $271 each; and 2) a confession of judgment clause. The promissory note signed by the defendants provided for payment to the bearer and was secured by a trust deed.

The maximum legal rate of interest which could have been charged the defendants was exceeded by Equitable, and it is uncontested that Equitable charged a usurious rate of interest. The question to be resolved by this court, however, is whether the defense of usury is available for use against the plaintiff, who claims to be holder in due course of the promissory note and therefore claims to have taken it free from the defense of usury. In the trial court the defense of usury was rejected and judgment was entered against the defendants based on the court's conclusion that the plaintiff was a holder in due course of the promissory note.

In this appeal the defendants pray that the trial court's order be reversed and that the loan be held to be usurious. Defendants further ask that the trial court be directed to enter an order allowing them twice the rate of interest, plus attorney's fees and court costs. They seek this relief based on Ill Rev Stats 1965, c 74, § 6. At the time of the original transaction that section allowed one aggrieved by the imposition of a usurious rate of interest to be freed of the obligation to pay any interest at all, but an amendment to the statute, in effect at the time of trial, granted one the right to a

375

penalty in the amount of double the usurious interest charged, plus attorney's fees and court costs.

Defendants defaulted on the note and the plaintiff obtained a judgment by confession. At the trial the defendants attempted to show that before the plaintiff purchased the note it knew of the usurious interest being charged, and consequently could not have become a holder in due course. Defendants point out that the loan application which the defendants filled out on January 7, 1963, has on it the name of the plaintiff. They also call attention to the testimony of Dominic Passarelli that he had been told by an agent of Equitable that Winter & Hirsch might give them $10,000. By the terms of the promissory note the monthly payments were to be made at the office of Ralph E. Brown, an attorney for plaintiff.

 The most compelling fact presented to the court is that plaintiff issued a check to Equitable for $11,000 on February 18, 1963, with the notation on the stub that the funds were for "the Passarelli deal," but the defendants did not receive the $10,000 until February 28, 1963, ten days later. In other words, the plaintiff had extended the money to Equitable for the Passarelli loan prior to the time the defendants executed the note which plaintiff claims to have bought from Equitable. This fact renders inapposite an entire series of cases upon which plaintiff relies. Those cases hold that a loan may be discounted at more than the usury rate if the purchaser is without knowledge that the note was originally tainted with usury. Stevenson v. Unkefer, 14 Ill 103; Sherman v. Blackman, 24 Ill 345; Colehour v. State Sav. Institution, 90 Ill 152. The critical factual distinction between those cases and the one before us is that the plaintiff in the instant case provided the money for the usurious loan before the loan was actually made, whereas in the cited cases the party claiming to be

376

the innocent holder of the usurious note had purchased it subsequent to its execution.

On oral argument counsel for plaintiff argued that there must have been a clerical error in the dates, and that no loan company would have given out money without the loan contract in its possession. The insurmountable difficulty with counsel's argument is that the date of the check issued to Equitable (February 18) and the date of the note executed by the defendants (February 28) are clearly established through the admission into evidence, without objection, of the check issued to Equitable and the note signed by the defendants. This court must accept those dates as accurate.

■ From these dates it appears that the plaintiff was a cooriginator of the note since it advanced the funds for the usurious loan before the loan was formalized. As a cooriginator it is charged with the knowledge of the terms of the loan, and that knowledge includes information regarding anticipated return on its investment. Such information should have made it clear that a usurious rate of interest was being charged the defendants; nevertheless, the plaintiff still elected to consummate the transaction, and it must now accept the consequences.

We note, however, that the plaintiff has argued that it did not give the $11,000 to Equitable until after it saw the loan contract; in other words, that it was a purchaser of the note after it had already been executed. Although the facts do not sustain this contention because of the respective dates on which the check to Equitable was issued and the note signed by the defendants, even if that version were correct, we would hold for the defendants.

■ ■ If the note was seen, as alleged by plaintiff, prior to its giving Equitable $11,000, then the plaintiff also saw that the defendants had signed a note promis-

377

ing to repay $16,260. From the face of the note one cannot ascertain the principal amount the defendants had received; it can only be known that "for value received" the defendants agreed to repay $16,260. We feel, however, that as reasonable businessmen, assuming arguendo that plaintiff did not know the truth, it should have raised the question of why Equitable was willing to sell a $16,260 note for $11,000. The difference between what the plaintiff was paying Equitable and the amount of the note, was a charge beyond that permitted under the usury statute, and plaintiff should, therefore, have inquired how much money the defendants were receiving. We cannot permit parties to intentionally keep themselves in ignorance of facts which, if known, would defeat their unlawful purpose.

The Uniform Commercial Code (Ill Rev Stats 1965, c 26, § 3–304(1)) provides that when an instrument is so incomplete as to call its validity into question, a purchaser of that instrument is on notice of the possibility of a claim against it. In this case we feel that the instrument, without the information as to the principal sum of the loan extended to the defendants, was "so incomplete" as to call its validity into question after plaintiff learned that it was able to buy it for only $11,000.

In Springer v. Mack, 222 Ill App 72, the court said at page 75:

> "The question of usury was discussed exhaustively and the authorities reviewed in the case of Clemens v. Crane, 234 Ill 215, where it was held, in substance, that in determining whether the essential elements of usury are present in a particular case, the intention of the parties, as the same appears from the facts and circumstances of the case, may be considered in connection with other evidence. The court also said, p 231:

" 'The form of the contract is not conclusive of the question. The desire of lenders to exact more than the law permits and the willingness of borrowers to concede whatever may be demanded to obtain temporary relief from financial embarrassment have resulted in a variety of shifts and cunning devices designed to evade the law. The character of a transaction is not to be judged by the mere verbal raiment in which the parties have clothed it, but by its true character as disclosed by the whole evidence. If, when so judged, it appears to be a loan or forbearance of money for a greater rate of interest than that allowed by law, the statute is violated and its penalties incurred, no matter what device the parties may have employed to conceal the real character of their dealings.' "

By failing to include the principal amount loaned to the borrower on the face of the loan contract or note, a subsequent purchaser of that contract is able to say "I had no idea that usury was involved. I simply bought the paper because it was a good buy." If the principal amount were shown, however, all subsequent purchases would be put on notice if usury were involved, and they could not avoid their own involvement in the charging of a usurious rate by the purchase of such paper.
██ We feel we are justified in saying that where it appears from the facts and circumstances of the particular transaction under review that a reasonably prudent businessman would have found the purchase suspicious, he should inquire as to the truth. One should become suspicious when, as here, he is himself able to purchase paper at a price which is in itself so far below the amount to be repaid from the borrower that because of that differential the contract would have been usuri-

ous had it been the original transaction. The suspicion should be all the more compelling when the paper is bought from a broker or other company that is in the business of selling such paper. Since brokers are in the business of selling loan contracts for a profit, they are likely to have loaned out less than the amount for which they are willing to sell the contract to another. Thus, if one is able to buy a loan contract from a broker for $11,000, it is more than likely that the broker had loaned some figure less than the $11,000, and the broker's profit then becomes the difference between the amount he actually loaned and that for which he sold the contract. It would then appear likely that when this difference is itself usurious, the original transaction was also. Stevenson v. Unkefer, 14 Ill 103, and similar cases do not dictate a contrary result.

In Stevenson, the note for $800 was payable in Baltimore bank notes. We must not lose sight of the fact that this case was decided in 1852, at which time the bank notes were likely to prove worthless upon the due date, three years from the date of execution of the promissory note. It was because of that contingency that the court held that the interest charged was not usurious, since, while in form the transaction was a loan, "the real character of the transaction was more in the nature of a speculation in bank paper, than a loan of money." (Page 105.)

In Sherman v. Blackman, 24 Ill 347, the court held that the defense of usury was not sustained in part, because there had been no showing that the plaintiff "had notice of the usury," thereby indicating that had such notice been shown the result would have been different and the defense considered good. Partlow v. Williams, 19 Ill 132, was decided under the Stevenson rule. The facts which the court found relevant were that the note there under review "was not payable in money, nor in anything of a fixed and determinate value like

money." (Page 133.) Rather, the note was payable in sight exchange on New York City, which the court characterized as "ever fluctuating in value." Under those circumstances the court felt the usury laws inapplicable since no one could foresee at the time the promissory note was executed what it would be worth at its maturity date.

The theory underlying these cases is that the risk assumed by the lender is great; namely, that the particular medium of exchange which the parties agreed would be used for repayment would be under par, and the lender would therefore actually sustain a net loss from the transaction. We believe the compelling reason for the creation of this rule was the great uncertainty as to the stability of local bank paper which existed at the time the above opinions were rendered. The lenders were speculators who were guessing that the bank paper would be more valuable than the currency they were lending. As the Partlow court put it, the notes "were not payable in money, nor in anything of a fixed and determinate value like money." The same reasoning was applied in Griffin v. Marine Co. of Chicago, 52 Ill 130, 149, where the court rejected the defense of usury, noting that at the maturity date the New York exchange notes, by which the loans were to be repaid, might be under par.

■ ■ These cases thus did not carve out the major rule by which the usury laws could be bypassed, but rather, a narrow exception to the imposition of the usury laws, an exception based on what the courts then believed to be a fair protection to lenders speculating in an uncertain commercial world. There may still exist situations in which the use of such a rule would be justified, but certainly, under the present case, the charging of an excessive interest rate cannot be justified upon the ground that the lender was to be repaid in a commodity uncertain in value. The lender was to be repaid in money, and it cannot be said that the value of money

is so uncertain that a lender may charge in excess of the usury limits. The very point of the usury statutes is to create the limits one may charge for the lending of money, and these laws take into account potential fluctuations, but establish what is deemed the maximum interest allowable. Not even the Stevenson case, decided over a hundred years ago, said it would be permissible for one to charge more interest than was allowed under the usury laws. Such a rule would destroy the very purpose of our usury statutes. These cases have no application to this appeal.

Under the circumstances, if the plaintiff was a purchaser, as it claims to be, it was on notice of a defense, since section 3–304, chapter 26 of Ill Rev Stats 1965 provides:

(1) The purchaser has notice of a claim or defense if

(a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; . . . .

This code provision is consistent with the earlier definition of "notice" found in section 1–201(25), chapter 26, providing:

A person has "notice" of a fact when

. . .

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

The intendment of these provisions would seem to be an attempt to prevent those dealing in the commercial world from obtaining various rights when, from a reasonable inquiry into the true facts that person would have discovered that a fact existed which pre-

vented him from obtaining the rights which he was seeking. Under the circumstances in the present case, it is fair to say that the plaintiff had "reason to know" there was a good defense against the note in question. Even the earlier cases point out that notice of usury destroyed one's rights in the note.

■ We have already pointed out that on the basis of the dates when plaintiff issued its check to Equitable and when Equitable issued the note to the defendants, it is apparent that plaintiff was not a purchaser at all, but rather had advanced the very money to Equitable which Equitable, in turn, gave to the defendants. That being the case, plaintiff was a cooriginator of the note, and a defense against that note would be good against the plaintiff. Accepting plaintiff's statement that the dates are in error and that it paid out the money only after it had already seen the note, we would still hold that plaintiff was on notice of the defense for the reasons stated. Under either theory, plaintiff was not a holder in due course of the note, and the trial court was in error when it found otherwise. The trial court's judgment must be reversed.

It remains to be determined whether defendants are entitled to those rights as now provided for by statute; namely, a penalty of twice the interest charged, plus attorney's fees and court costs. The statute so providing was in effect at the time of trial. At the time of the original transaction, however, the relevant statute simply provided that when a loan was found usurious the borrower was to be relieved of the obligation to pay any interest, and would only need to repay the principal amount loaned. We must determine which statute applies in the instant case.

This point was not argued by either side in the briefs. The defendants state that the trial court was in error in failing to assess the penalty provisions of the amend-

ed statute, while the plaintiff considers that the trial court's determination was correct. On oral argument, however, counsel for defendants suggested that the amended version should apply to this action because the penalty provisions are simply procedural aspects of the lawsuit. It is suggested that the amendment does not affect the substantive rights of either party, but is rather a subsidiary element of the main cause. We agree with the defendants.

██ ██ It is true that many cases have stated the general proposition that prospective application of legislation is favored over retrospective application. In People ex rel. Saam v. Village of Green Oaks, 55 Ill App2d 51, 204 NE2d 149 the court said at page 54: "An amendatory act ordinarily is construed as prospective, and not as retroactive, in the absence of express language declaring it to be retroactive. [Citing cases.]" The amendment under our review does not contain any express language requiring a retrospective application, but we conclude that such an application is necessary.

The rule regarding prospective versus retroactive application of statutory amendments is not quite so simple as to be disposed of by merely looking to see if the amendment contains any express language on the question of how it is to be applied. In Nelson v. Miller, 11 Ill 2d 378, 143 NE2d 673, the Illinois Supreme Court considered the question of whether the amended sections of the Civil Practice Act could be applied retroactively to obtain in personam jurisdiction over out-of-state defendants. At the time of the transaction which gave rise to the dispute, personal jurisdiction was not obtainable over the defendant, and only by use of a subsequent amendment to the Civil Practice Act could such jurisdiction have been attained. The court held that the new provisions were properly applied to the defendants.

The Miller opinion calls attention to the court's earlier opinion in Ogdon v. Gianakos, 415 Ill 591, 114 NE2d 686,

384

in which it had been held there was no vested right in any particular remedy or method of procedure. The court in Ogdon concluded at page 597 that ". . . when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation." The amendment before us contains no saving clause. The amendment in Miller also contained no saving clause, and the court found that the amendment merely created a new manner of obtaining jurisdiction to enforce already existing rights. At page 383 of the Miller opinion the court said: "Retrospective application of such a statute creates a problem only if that application operates unfairly against a litigant who justifyably [sic] acted in reliance on some provision of the prior law."

 Applying these principles to the case before us, we must conclude that remedial, not substantive rights are involved, and that retrospective application will not operate unfairly.

 The Miller position is reaffirmed in another Illinois Supreme Court case, Hogan v. Bleeker, 29 Ill2d 181, 193 NE2d 844, where the court said at page 184: "Where a statute giving a special remedy is amended without a savings clause in favor of pending actions, all actions affected must be decided in conformity to the law then existing, both in the trial and Appellate Courts, without regard to whether the actions accrued before or after such change, or whether action had been previously instituted." The statute here involved does give a "special remedy" and we believe that under the Illinois Supreme Court directives, the remedy existing as of the date of trial was applicable. It must be remembered that the section under review does not determine the substance of usury, nor were the elements of usury altered by

385

the amendment; all that was altered was the remedy available in those cases where usurious interest has been charged.

The judgment of the Circuit Court is reversed, and the cause is remanded with directions to enter a judgment for defendants and for further proceedings in conformity with this opinion.

Reversed and remanded with directions.

LYONS, J., concurs.

BURKE, J., dissenting:

The defendants, husband and wife, needed funds to pay delinquent taxes on a vacant tract of land. The husband approached Equitable to procure the loan and was accommodated. The check representing the loaned funds was signed and delivered by Equitable to the defendants who received credit through usual banking channels. The papers evidencing the loan thus made through Equitable were purchased by and delivered to plaintiff in the usual course of business. The defendants made payments on the loan to the plaintiff from time to time until the default which resulted in the judgment.

The burden of proof was on defendants to establish usury by a preponderance of the evidence. The purchase of the note and mortgage from the lender, Equitable, at a discount greater than the rate of interest allowed by law does not constitute usury. Defendants, however, claim that Equitable was plaintiff's agent. Equitable came into the transaction by the initiative of the defendants. The defendants failed to prove that Equitable was plaintiff's agent or that plaintiff purchased the note and mortgage with notice of usury. The evidence shows that plaintiff is a holder in due course. For these reasons the order confirming the judgment should be affirmed.