PAUL J. ARRA *et al.*, Plaintiffs-Appellants, v. FIRST STATE BANK AND TRUST COMPANY OF FRANKLIN PARK, Defendant-Appellee.

First District (4th Division)   No. 1—92—3529

Opinion filed July 29, 1993.

Richard M. Kates, of Chicago, for appellants.

Carey, Filter, White & Boland, of Chicago (Daniel R. Harper and Edmund P. Boland, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

In July 1986, a debtor-creditor relationship existed between the plaintiffs, Paul J. Arra and Mary Ann Arra, and the defendant, the First State Bank and Trust Company of Franklin Park (now known as Affiliated Bank/Franklin Park). Under the notes and other instruments evidencing the relationship, the defendant obtained both a mortgage interest in the plaintiffs' home located in Glen Ellyn, Illinois (the property), and a collateral assignment of the beneficial interest of the land trust which held legal title to the property. Among other provisions, the collateral instruments provided that, in the event of a default, the defendant could recover all reasonable expenses incurred by it in exercising its rights including attorney fees and court costs.

The plaintiffs defaulted under the terms of the notes because they did not pay the installments due. As a consequence, the defendant filed a foreclosure proceeding in the circuit court of Du Page County on July 15, 1986. Additionally, on October 10, 1986, the defendant gave notice of a public sale of the beneficial interest of the trust holding title to the property pursuant to section 9—504 of the Uniform

Commercial Code (the UCC sale) (Ill. Rev. Stat. 1985, ch. 26, par. 9—504). The UCC sale was scheduled for November 20, 1986.

In addition to the defendant's collateral interests, the property was also encumbered by a Federal tax lien in favor of the Internal Revenue Service.

On November 20, 1986, prior to the scheduled UCC sale, the plaintiffs filed for protection under chapter 11 of the Bankruptcy Code (11 U.S.C. §1101 *et seq.* (1982)) in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. As a result, the foreclosure action and the UCC sale were automatically stayed. See 11 U.S.C. §362 (1982).

In 1989, while the bankruptcy proceeding was pending, the plaintiffs litigated their dispute with the Internal Revenue Service to a conclusion with a finding that no tax was owed.

On November 21, 1989, an order was entered in the bankruptcy proceeding modifying the automatic stay to permit the defendant to enforce its collateral rights in the property after January 22, 1990. On January 22, 1990, the plaintiffs filed an emergency motion before the bankruptcy court requesting that the stay be reinstated. In support of their motion they alleged, *inter alia,* that they had not yet received a commitment for refinancing of the property which would allow them to pay off the defendant and that the defendant's payoff figure tendered to the plaintiffs included $14,000 for attorney fees which were being contested. At the hearing on the plaintiffs' emergency motion, the plaintiffs' attorney informed the bankruptcy judge in the presence of the defendant's attorney that the attorney fees included in the payoff figure were in question and that if the plaintiffs had to pay the fees to obtain refinancing they would do so and then sue the defendant. On January 23, 1990, the judge in the bankruptcy proceeding entered an order on the plaintiffs' emergency motion granting a final extension of the stay until February 22, 1990.

The plaintiffs obtained refinancing of the property and scheduled a loan closing for the afternoon of February 22, 1990. In preparation for the loan closing, the plaintiffs secured an updated payoff statement from the defendant on that date which included attorney fees of $15,409.19. At 10 a.m., on the same day, the plaintiffs' attorney secured the dismissal of the bankruptcy proceeding. In the afternoon, the plaintiffs closed the refinancing loan and from its proceeds paid the defendant the full sum reflected in the payoff statement including the attorney fees.

The plaintiffs demanded a return of a portion of the attorney fees paid to the defendant. When the defendant refused, the plaintiffs filed

the instant action. Although in two counts, the plaintiffs' amended complaint sought a judgment against the defendant for the attorney fees paid in excess of reasonable charges.

The defendant answered the plaintiffs' amended complaint, filed two affirmative defenses, and moved for summary judgment. The defendant argued that the plaintiffs' payment of the demanded sums for attorney fees was not made under duress but was a voluntary payment, and, by failing to raise their objection to the fees demanded in either the bankruptcy proceeding or the foreclosure proceeding, the plaintiffs waived any cause of action for a return of the attorney fees.

The trial court granted the defendant's motion for summary judgment on both counts of the plaintiffs' amended complaint and the plaintiffs now appeal. For the reasons which follow, we reverse the judgment of the trial court and remand this action for further proceedings.

Because this case is on appeal from the entry of summary judgment, the issue on review is the same as that before the trial court: namely, whether the evidentiary material before the trial court, when viewed in a light most favorable to the plaintiff, establishes the absence of a genuine issue of material fact and the defendant's entitlement to judgment as a matter of law. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

As a preliminary matter, the defendant points to an apparent conflict in this district as to the appropriate standard of review in cases involving an appeal from the entry of summary judgment. To be sure, there are a group of cases which suggest that an abuse of discretion standard should be applied. (See, *e.g., Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 578 N.E.2d 33; *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.) We, however, follow the line of cases which holds that whether summary judgment is appropriate is a question of law to be determined by a *de novo* review independent of the trial court's reasoning on the issues presented. (*Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083; *Hatton v. Money Lenders & Associates, Ltd.* (1984), 127 Ill. App. 3d 577, 469 N.E.2d 360.) If, from a review of the evidentiary material before the trial court, a reviewing court determines that a material issue of fact exists or that summary judgment was based upon an erroneous interpretation of the law, a reversal is warranted. *Reed v. Fleming* (1985), 132 Ill. App. 3d 722,

477 N.E.2d 733; *Warren v. Lemay* (1986), 144 Ill. App. 3d 107, 494 N.E.2d 206.

■ The resolution of this appeal rests upon the application of the voluntary-payment doctrine to the facts of this case. Our supreme court articulated this doctrine in *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200, 201:

> "It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion."

The court reaffirmed the voluntary-payment doctrine in *Geary v. Dominick's Finer Foods, Inc.* (1989), 129 Ill. 2d 389, 393, 544 N.E.2d 344, 346, and *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 48-49, 426 N.E.2d 844, 849.

■ In this case, there is no question that the defendant demanded payment of attorney fees under a claim of right and that the plaintiffs paid the fees with sufficient knowledge of the source of the defendant's claim and the quantum of legal services incurred to form a conclusion as to the propriety of the amount demanded. But the fact that payment was demanded under a claim of right and paid with knowledge of the relevant facts does not mandate the application of the voluntary-payment doctrine to bar the plaintiffs' right to recover the sums paid for attorney fees in excess of reasonable fees. The voluntariness of a payment is a prerequisite to the application of the doctrine. (*Isenstein v. Rosewell* (1985), 106 Ill. 2d 301, 478 N.E.2d 330.) If a payment is made after a protest (*Isenstein,* 106 Ill. 2d at 309), or as a result of compulsion or duress (*Getto,* 86 Ill. 2d at 51-52), it is stripped of its voluntary character.

The facts of this case reveal that the plaintiffs objected to the amount the defendant demanded for attorney fees in both the bankruptcy proceeding on January 22, 1990, and in the arguments of their attorney in the hearing of the emergency motion on the same day. In the presence of the defendant's counsel, the plaintiffs' attorney informed the bankruptcy judge: "[i]f we have to pay the attorney fees, we will pay them. We will turn around, and we will sue them." The defendant argues that the plaintiffs did not pay the disputed fees under protest because after it issued the revised payoff statement on

February 22, 1990, the plaintiffs did not protest prior to payment later that day. The defendant further contends that not only did the plaintiffs have an opportunity to again protest before the bankruptcy judge in the hearing on that day, but that when the plaintiffs' payment was tendered in the afternoon of the same day, it was made under a cover letter which stated: "[t]hese checks represent payment in full on said proceeds letter."

The notes and security instruments which govern the contractual relationship of the parties do not contain any provisions for paying under protest. Our research fails to reveal any cases in this jurisdiction which address the adequacy of a protest in the absence of a designated procedure. We are of the opinion that when the payor objects or protests in some manner, the question of whether the objection was adequate or whether the payor waived the objection prior to payment is peculiarly a question for the trier of fact to determine when considering all of the facts and circumstances of the case. As such, it would be error to hold that as a matter of law the plaintiffs in this case did not pay the attorney fees demanded by the defendant under protest.

Even if the plaintiffs failed to pay the defendant under protest, the voluntary-payment doctrine would not bar their right of action if the payment was made under duress. "[P]laintiffs have always been allowed to use duress as an exception to the doctrine, regardless of whether they failed to protest ***." *Geary*, 129 Ill. 2d at 407.

In determining whether duress motivated the payment of a demanded sum, attention must be given to the nature of the asset involved and the consequences of nonpayment. If the asset is a necessity and the consequences of nonpayment would adversely affect the asset, a case might be made for duress as a motivating factor in payment. (See *Geary*, 129 Ill. 2d at 398.) The asset in this case was the plaintiffs' home, which was certainly a necessity. The effect of nonpayment of the sums demanded by the defendant would have been that the defendant would not have released its liens upon the property, the refinancing loan would not have closed, the bankruptcy stay would have expired on February 22, 1990, and the defendant would have been at liberty to proceed with its foreclosure action and, more threatening, its UCC sale. The plaintiffs could have litigated the fee issue in the bankruptcy proceeding but they would have been required to do so without the protection of the statutory stay because the bankruptcy judge granted a final extension of the stay in the order of January 22, 1990. The plaintiffs also could have litigated the issue in

the foreclosure proceeding but only after the bankruptcy stay was lifted. In either case, the property would have been at risk.

When a person, to prevent injury to his property, is required to make a payment of money to which the payee is not entitled and no adequate opportunity is afforded to the payor to resist the demand, the payment is made under duress and can be recovered. (*Schlossberg v. E.L. Trendel & Associates, Inc.* (1978), 63 Ill. App. 3d 939, 380 N.E.2d 950.) The questions of whether duress was actually present and whether remedies alternative to a payment of the demanded sum were adequate in light of the circumstances of the transaction are questions of fact for the trier of fact to resolve. *Schlossberg*, 63 Ill. App. 3d 939, 380 N.E.2d 950.

Our review of the evidentiary material that was before the trial court, when construed in a light most favorable to the plaintiffs, leads us to the conclusion that genuine issues of material fact exist as to whether the plaintiffs' protest of the sums demanded by the defendant for attorney fees was adequate and whether the plaintiffs paid those sums under duress. As such, we hold that the trial court erred when it granted summary judgment in the defendant's favor on counts I and II of the plaintiffs' amended complaint.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this cause for further proceedings.

Reversed and remanded.

JOHNSON and CAHILL, JJ., concur.