JACQUELINE BRANDT, Plaintiff-Appellant, v. TIME INSURANCE COM-
PANY, Defendant-Appellee and Third-Party Plaintiff (Douglas Ruth *et al.*,
Defendants and Third-Party Defendants).

First District (4th Division)   Nos. 1—97—2913, 1—98—0143 cons.

Opinion filed December 10, 1998.

WOLFSON, J., specially concurring.

Edelman & Combs, of Chicago (Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Ignacio D. Maramba, of counsel), for appellant.

Peterson & Ross, of Chicago (William A. Chittenden III and Laura A. Smith, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Jacqueline Brandt, filed the instant action against the defendant, Time Insurance Company (Time), and others to recover damages she allegedly sustained as a consequence of Time's refusal to pay her claims under a health insurance policy. Brandt's complaint as amended set forth, *inter alia*, claims against Time for breach of contract (count I), a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1996)) (count II), fraud (count IX), and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1996)) (count X). On July 17, 1997, the circuit court dismissed counts IX and X of Brandt's complaint for failure to state causes of action, including within its order the requisite finding of appealability under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Brandt filed a timely notice of appeal from that order which was docketed in this court as appeal No. 1—97—2913. Thereafter, on January 8, 1998, the circuit court granted summary judgment in favor of Time on counts I and II of Brandt's complaint, again including within its order the requisite finding of appealability under Supreme Court Rule 304(a). Brandt filed a timely notice of appeal from the January 8 order which was docketed in this court as appeal No. 1—98—0143.

Brandt died after the filing of her appeals and Howard E. Tuma, special administrator of Brandt's estate, was substituted as the appellant. In the interest of clarity, however, we shall continue to refer to Brandt as the plaintiff. We consolidated Brandt's appeals and, for the reasons that follow, we now (1) affirm the July 17, 1997, order of the circuit court dismissing counts IX and X, (2) reverse the summary judgment entered on January 8, 1998, in favor of Time on counts I and II, and (3) remand this cause to the circuit court for further proceedings consistent with this opinion.

Brandt was diagnosed as a Type II diabetic in 1988. Beginning in 1990, Douglas Ruth, an insurance broker, assisted Brandt in obtaining health insurance policies. In 1994, Brandt was issued two short-term medical (STM) insurance policies, which provided coverage for a maximum of six months and were intended to provide interim coverage while she sought a comprehensive medical insurance policy. Brandt's STM policies excluded her diabetes from coverage as a preexisting condition.

In March 1995, Ruth informed Brandt that her current STM policy was about to expire and recommended that she apply for an STM policy offered by Time. Ruth completed the Time application for Brandt and answered the questions contained therein, including the following:

"4. Within the last five (5) years, have you, your spouse, or any dependent to be covered, ever received any medical or surgical diagnosis or treatment including medication for: heart or circulatory system disorder including heart attack or chest pain; stroke; diabetes; cancer ***.
***

Note: The policy *** cannot be issued if YES is answered on any questions, 2-4."

Ruth answered "No" to question 4, although he knew of Brandt's diabetic condition. Ruth sent Brandt's application with her premium check to Insurance Consulting Group (ICG), a company that processes insurance applications for policies issued by Time. Time issued the policy to Brandt, effective April 4, 1995.

On or around August 1, 1995, while her Time STM policy was in effect, Brandt was diagnosed with terminal stomach cancer. Brandt incurred medical bills for treatment of the cancer which she submitted to Time for payment. Before paying out on Brandt's claims, Time discovered that Brandt had suffered from diabetes since 1988 and had been treated for her condition within the five-year period prior to her application for its STM policy. Time denied Brandt's claim for benefits and notified her on October 30, 1995, that it was rescinding the STM policy.

Brandt filed the instant action against Time, Ruth, and Ruth's company, Lenox Financial Services, Inc., on April 4, 1996. Brandt's complaint alleged, *inter alia*, that Ruth obtained her signature on a blank application for Time's STM policy, represented to her that he would fill it out accurately, and then recklessly filled out the application without indicating that Brandt suffered from diabetes. According to her complaint, Brandt had never seen the completed application until Time refused to honor the policy. Brandt alleged that Time was precluded from relying on Brandt's diabetes as a basis for denying coverage since it failed to attach the application to the policy (see 215 ILCS 5/154 (West 1994)). Brandt claimed that, by refusing to honor the policy, Time breached its contract of insurance (count I) and violated section 155 of the Insurance Code (215 ILCS 5/155 (West 1996)).

Time filed its answer along with affirmative defenses alleging that the STM policy was void *ab initio* since the misrepresentations in Brandt's application were material to Time's decision to accept the risk, were material to the hazard assumed by Time, and were made with the intent to deceive.

On December 2, 1996, Brandt amended her complaint, adding two new counts alleging that Time's practice of "post-claim underwriting"

constituted common law fraud (count IX) and an unfair and deceptive trade practice under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1996)) (count X). Time moved to dismiss counts IX and X for failure to state causes of action. The trial court granted the motion and Brandt was given leave to replead within 28 days. No amended complaint was filed, and counts IX and X were dismissed with prejudice.

## I. APPEAL FROM THE DISMISSAL OF COUNTS IX AND X

■ On appeal from a motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), this court must determine whether the complaint alleges facts which, if proved, would entitle the plaintiff to relief. *Charles v. Seigfried*, 165 Ill. 2d 482, 485-86, 651 N.E.2d 154 (1995). Our review is *de novo. Kaden v. Puchinski*, 287 Ill. App. 3d 546, 548, 678 N.E.2d 792 (1997).

■ ■ In order to plead an action for fraud, the plaintiff must allege: that the defendant made a false statement of material fact, knowing or believing that the statement was false, with the intention of inducing the plaintiff to act; that the plaintiff reasonably relied on the truth of the statement and acted thereon; and that the plaintiff suffered damages that were proximately caused by her action in reliance upon the statement. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542-43, 607 N.E.2d 194 (1992). The basic elements of a deception claim under section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 1996)) are: (1) a deceptive act or practice; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584 (1996).

Counts IX and X of Brandt's complaint allege that Time improperly practiced "post-claim underwriting." Brandt claims that an insurer must investigate the information on an application before, or within a reasonable time after, issuing a policy. According to Brandt, issuing a policy and then waiting until a claim is made before investigating the insurability of the applicant perpetrates a fraud upon the applicant and the public. Brandt also claims that this constitutes an unfair and deceptive business practice. Brandt cites to a number of extrajurisdictional cases in support of her argument that the practice of "post-claim underwriting" (see, *e.g., White v. Continental General Insurance Co.*, 831 F. Supp. 1545 (D. Wyo. 1993)), or "retroactive underwriting" (see, *e.g., Meyer v. Blue Cross & Blue Shield*, 500 N.W.2d 150 (Minn. App. 1993)) should preclude an insurer from rescinding its policy or disclaiming liability after a claim has been made.

■ Although our research has not disclosed any Illinois cases specifically addressing this issue, it has long been the law in Illinois that an insurer has no general duty to investigate the truthfulness of answers given to questions asked on an application for insurance. See *Bageanis v. American Bankers Life Assurance Co.*, 783 F. Supp. 1141, 1146 (N.D. Ill. 1992); see also *Apolskis v. Concord Life Insurance Co.*, 445 F.2d 31, 36 (7th Cir. 1971); *Metropolitan Life Insurance Co. v. Moravec*, 214 Ill. 186, 188, 73 N.E. 415 (1905); *National Boulevard Bank v. Georgetown Life Insurance Co.*, 129 Ill. App. 3d 73, 472 N.E.2d 80 (1984). Our courts have recognized that "[a]n insurance company has the right to rely on the truthfulness of the answers given by an insurance applicant, and the insured has the corresponding duty to supply complete and accurate information to the insurer." *Commercial Life Insurance v. Lone Star Life Insurance Co.*, 727 F. Supp. 467, 471 (N.D. Ill. 1989). Since Illinois law imposes no duty on an insurer to conduct an independent investigation of insurability before issuing an insurance policy and Time made no representation as to when, or if, it would investigate the truthfulness of the information contained in Brandt's application, Brandt cannot predicate her claims for fraud and violation of the Consumer Fraud Act on the allegation that Time engaged in post-claim or retroactive underwriting. We conclude that counts IX and X fail to state causes of action for which Brandt would be entitled to relief, and we affirm the trial court's dismissal in appeal No. 1—97—2913.

## II. APPEAL FROM SUMMARY JUDGMENT ON COUNTS I AND II

We now address appeal No. 1—98—0143, in which Brandt contends that the trial court erroneously granted summary judgment in favor of Time on counts I and II, based on breach of contract and violation of section 155 of the Insurance Code, respectively.

■ A motion for summary judgment may be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). The trial court is under a duty to consider such evidence strictly against the movant and in the light most favorable to the opposing party. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1980). If the evidentiary material could lead to more than one reasonable conclusion or inference, the court must adopt the conclusion or inference that is the most favorable to the opponent of the motion. *Lapidot v. Memorial Medical Center*, 144 Ill. App. 3d 141, 147, 494 N.E.2d 838 (1986). Our review of an order granting summary judgment is *de novo. Crum &*

*Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390, 620 N.E.2d 1073 (1993). Accordingly, we independently examine the evidence presented in support of and in opposition to a motion for summary judgment, apply the same standards that the trial court was obliged to apply, and determine whether the movant is entitled to judgment as a matter of law. *Arra v. First State Bank & Trust Co.*, 250 Ill. App. 3d 403, 406, 621 N.E.2d 128 (1993).

■ To defeat or avoid a policy on the grounds of misrepresentation or false warranty, the insurer must first show that the misrepresentation was made with actual intent to defraud or that it materially affected the risk. *Inter-Insurance Exchange v. Milwaukee Mutual Insurance Co.*, 61 Ill. App. 3d 928, 931, 378 N.E.2d 391 (1978). In its motion for summary judgment on counts I and II, Time contended that, under section 154 of the Insurance Code (215 ILCS 5/154 (West 1996)), Brandt's failure to disclose her true medical history on the application rendered the policy void as a matter of law. According to Time, Brandt's misrepresentation materially affected both its acceptance of the risk and the risk assumed because Time would not have issued the policy had it known about Brandt's illness. In support of its motion, Time submitted a copy of the completed application and the affidavit of a Time supervisor confirming that Time rescinded Brandt's policy after it became aware of her diabetic condition. Time attached part of Ruth's deposition in which he indicated that Brandt signed the application after he went over the questions with her. Time also attached an excerpt of Brandt's evidence deposition in which she identified her signature on the application.

In response, Brandt argued that Time failed to show that she misrepresented her medical history. Brandt contended that Ruth completed the application after procuring her signature on a blank copy. Relying on the general agency contract in force between ICG and Time, Brandt alleged that (1) Ruth, as ICG's agent, was authorized to solicit insurance on behalf of Time; (2) Ruth acted as Time's subagent when he filled out Brandt's application; (3) Ruth's misrepresentation as to Brandt's diabetes was, therefore, imputed to Time; and (4) Time was estopped from relying on the misrepresentation in the application as a basis for rescission of its policy. Brandt also alleged that Time was precluded from relying on the misrepresentation because it failed to attach the application to the policy issued to her as required by section 154 of the Insurance Code (215 ILCS 5/154 (West 1994)).

Time replied that it was irrelevant whether Ruth or Brandt filled out the application because Ruth was acting as Brandt's insurance broker for the purpose of completing the application and obtaining the policy. Time referred to Brandt's complaint in which she alleged that

Ruth served as her financial and investment advisor and insurance broker and, as such, owed her a fiduciary duty. Time further maintained that the 1996 amendment to section 154 of the Insurance Code applied to this action; thus, Time was no longer required to prove physical attachment of the application when relying on a misrepresentation therein as a basis for rescission.

The trial court entered summary judgment on counts I and II in favor of Time. In so ruling, the trial court implicitly accepted Time's argument that Ruth acted as Brandt's agent with respect to this transaction. However, our review of the evidence indicates that a question of fact remains as to whether Ruth acted as Time's agent when he completed the policy application.

### A. RUTH'S AGENCY

■ An insurance agent generally acts as the agent of the insurer (*State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431, 583 N.E.2d 547 (1991)), while an insurance broker acts as an agent of the insured (*State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595, 630 N.E.2d 940 (1994)). However, an insurance broker can be an agent of an insurer for a limited purpose, such as soliciting insurance, while not thereby becoming a general agent of the insurer. *Zannini v. Reliance Insurance Co.*, 147 Ill. 2d 437, 452, 590 N.E.2d 457 (1992). Thus, a person's conduct during a transaction, not his title, determines whether he is an agent of the insurance company or an agent for the insured. *Zannini*, 147 Ill. 2d at 452-53. The factors to be considered in this determination include: (1) who first set the individual in motion; (2) who could control his action; (3) who was to pay him; and (4) whose interest he was there to protect. *Krause v. Pekin Life Insurance Co.*, 194 Ill. App. 3d 798, 805, 551 N.E.2d 395 (1990). Whether an individual is acting as an agent for the insured or the insurer is generally a question of fact, and only when the evidence clearly shows the person is the agent of the insured does the issue become one of law. *Allied American Insurance Co. v. Ayala*, 247 Ill. App. 3d 538, 552, 616 N.E.2d 1349 (1993).

In his deposition testimony, Ruth identified a document that he described as an agent licensing agreement between himself and ICG. The record contains a contract between Ruth and ICG (formerly the Combined Employers Association) which indicates that ICG, the "Agency," employed Ruth, the "Agent," as an independent sales person. However, the contract states that "[t]he Agent agrees that he is an independent contractor and has no authority to act for or on behalf of the Agency or to bind the Agency to any contract on any matter without the express approval in writing of the Agency."

The record also contains a "General Agency Contract" between ICG and Time which provided that ICG was authorized to recommend agents to solicit insurance for Time and that ICG could collect initial premiums up to a certain monetary limit. Under the section entitled "Field Underwriting," ICG was responsible for "(1) asking all questions and correctly recording all answers on applications for insurance and for immediately sending such applications to Time's Home Office, and (2) complying with and carrying out all administrative rules of Time." ICG was also required to make available to Time all information which came into its possession concerning the underwriting of the risk.

Ingrid Faro, an employee of ICG, testified in her deposition that it was ICG's procedure to issue STM policies out of its office after receiving an application from a soliciting agent. According to Faro, ICG would then send the policy with a copy of the application back to the agent to review for accuracy and deliver to his client.

■ Viewing this evidence in the light most favorable to Brandt, a trier of fact could determine that Ruth acted, in this instance, as a soliciting agent for ICG and a subagent for Time. Ruth testified that he was a party to an "agent licensing agreement" with ICG. Although the contract between Ruth and ICG states that the agent is an independent contractor, we note that a party may be both an independent contractor and an agent for another. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1065, 675 N.E.2d 217 (1996). In any case, whether the parties' relationship is that of principal and agent or owner and independent contractor is a question of fact unless the relationship is indisputably clear. *Letsos*, 285 Ill. App. 3d at 1065.

If Ruth acted as an agent for ICG, he was responsible, under the general agency contract between ICG and Time, for asking questions and correctly recording answers on Brandt's application. Ruth's name is handwritten on the application as "Agent." Ruth admitted that he completed Brandt's application and may have even done so after she signed it. Ruth sent the application to ICG, and ICG printed the policy and then sent it back to him along with his commission check. Ruth was then responsible for mailing the policy to Brandt. Since Ruth's actions were, to a certain extent, regulated by the general agency contract between ICG and Time, a trier of fact could find that Ruth was acting on Time's behalf in this instance as its subagent.

If Ruth acted as Time's subagent, his knowledge of Brandt's diabetic condition could be imputed to Time and Time would thereby be estopped from avoiding the policy. An insurer is estopped from avoiding a policy for untrue representations in the application where the insured discloses facts to the agent and the agent, in filling out the

application, does not state the facts as they are disclosed to him but instead inserts conclusions of his own or answers inconsistent with the facts. See *Boyles v. Freeman*, 21 Ill. App. 3d 535, 539, 315 N.E.2d 899 (1974). The insurer cannot rely on incorrectly recorded answers, even when the insured knows that the agent has entered answers different from the ones he gave, where the incorrect answers are entered pursuant to the agent's advice, suggestion, or interpretation. *Logan v. Allstate Life Insurance Co.*, 19 Ill. App. 3d 656, 660, 312 N.E.2d 416 (1974). The agent's knowledge of the truthfulness of the statements is imputed to the insurer. *Logan*, 19 Ill. App. 3d at 660-61. It is only where the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, that a court will refuse to impute the knowledge of the agent to the insurance company. *Logan*, 19 Ill. App. 3d at 661.

In viewing the evidence in the light most favorable to Brandt, we conclude that a question of fact remains as to whether Ruth acted as Time's agent and, thus, whether his knowledge of the misrepresentation could be imputed to Time. For this reason, the trial court erred in entering summary judgment in favor of Time. We reverse the order of summary judgment in favor of Time on counts I and II, and remand this cause for further proceedings.

### B. SECTION 154 OF THE INSURANCE CODE

Having reversed the summary judgment in favor of Time, we could end our analysis. However, if, on remand, the trier of fact finds that Ruth was not acting as Time's agent, the trial court must determine whether to apply the amended version of section 154 of the Insurance Code. Consequently, we will address this issue.

When Time issued Brandt's STM policy in April 1995, section 154 provided that, in order for an insurer to rely on a misrepresentation contained in the application as a basis for avoiding an insurance policy, the application must have been attached to the policy and made a part thereof. 215 ILCS 5/154 (West 1994)); *National Union Fire Insurance Co. v. Continental Illinois Corp.*, 658 F. Supp. 781, 787 (N.D. Ill. 1987); *Economy Fire & Casualty Co. v. Thornsberry*, 66 Ill. App. 3d 225, 227, 383 N.E.2d 780 (1978). An insurer's inability to allege and prove such physical attachment was fatal to its attempted reliance on the unattached documents as the basis for rescission. *National Union Fire Insurance Co.*, 658 F. Supp. at 787.

A question of fact remains as to whether a copy of Brandt's completed application was attached to Time's STM policy. Faro's affidavit states that she attached a copy of the completed application to the policy and mailed it to Ruth. Ruth testified that it was his belief

that the application was attached to the policy he mailed to Brandt because that was the usual procedure; however, he could not specifically recall whether it was attached. Brandt testified in her evidence deposition that she never saw the completed application until Time rescinded the policy.

Two months after Brandt filed her complaint, Public Act 89—413 eliminated the requirement that a copy of the application be attached to an insurance policy and made a part thereof before a misrepresentation contained therein could be asserted as a basis to avoid the policy. See Pub. Act 89—413, § 5, eff. June 1, 1996 (amending 215 ILCS 5/154 (West 1994)). Accordingly, insurance carriers are no longer precluded from declaring a policy null and void in those instances where the completed application containing the misrepresentations or inaccuracies has not been attached to the issued policy.

Brandt contends that the version of section 154 in force when her policy was issued in April 1995 applies to this action and that Time's failure to attach a copy of her completed application to the policy precluded it, as a matter of law, from disclaiming liability based on a misrepresentation in her application.

In *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 664 N.E.2d 36 (1996), our supreme court held that new legislation may not be retroactively applied to pending suits or preexisting causes of action where doing so would affect a vested right. The court defined vested rights as interests protected from legislative interference by our due process clause. *Armstead*, 171 Ill. 2d at 289. "Whether a particular expectation rises to the level of a vested right is not capable of precise definition, but it is one that is so far perfected that it cannot be taken away by legislation, and it may consist of 'a complete and unconditional demand or exemption that may be equated with a property interest.' " *Harraz v. Snyder*, 283 Ill. App. 3d 254, 262, 669 N.E.2d 911 (1996), quoting *Armstead*, 171 Ill. 2d at 291.

In the absence of language to the contrary, the laws and statutes pertinent to a contract and in force at the time the contract is executed are considered a part of that contract as though they were expressly incorporated therein. *S&D Service, Inc. v. W. 915-925 Schubert Condominium Ass'n*, 132 Ill. App. 3d 1019, 1023, 478 N.E.2d 478 (1985); *Hindu Incense Manufacturing Co. v. MacKenzie*, 403 Ill. 390, 392, 86 N.E.2d 214 (1949). Contracting parties are presumed to have entered into the contract with a knowledge of the existing laws as they relate to their agreement. *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 945, 582 N.E.2d 1313 (1991). By entering into a contract, and by not excluding or modifying the effects of the various laws, the contracting parties are deemed to have accepted

these laws as part of their agreement. *S&D Service, Inc.*, 132 Ill. App. 3d at 1023.

Statutory provisions applicable to insurance policies that are in effect at the time the policy is issued are treated as part of the agreement. *Weisberg v. Royal Insurance Co.*, 124 Ill. App. 3d 864, 868, 464 N.E.2d 1170 (1984). A party's rights under an insurance contract become "vested" when the policy is issued, rather than when the rights thereunder are asserted. *Weisberg*, 124 Ill. App. 3d at 871-72. When Brandt was issued her policy, section 154 of the Insurance Code required that a copy of the application be attached to the policy before the insurer could rely on a misrepresentation contained therein to avoid the policy, and this requirement became an implied term of the policy. Accordingly, Brandt acquired a vested right to claim that Time's failure to attach the application to the policy precluded it from relying on any misrepresentation contained therein.

■ We reject the contention that the 1996 amendment to section 154 of the Insurance Code constituted a mere change in statutory remedy or procedure and applying the amendment prospectively amounts to sanctioning the notion that Brandt had a vested right to lie in order to obtain insurance. This simplistic argument ignores the primary purpose of the pre-amendment statute, which was to allow for objective evidence of negotiations at the time of application for the protection *of the insured* from possible frauds by insurance agents in falsifying answers given by the insured when applying for insurance. See 215 ILCS 5/154 (West 1994); *Gibralter Casualty Co. v. A. Epstein & Sons, International, Inc.*, 206 Ill. App. 3d 272, 277, 562 N.E.2d 1039 (1990). In such cases, if the application was not attached to the policy so that the insured could examine it carefully, she labored under the mistaken impression that she was protected by the policy issued to her when, in actuality, she may not have coverage. See *Inter-Insurance Exchange*, 61 Ill. App. 3d at 931-32. Brandt was issued a policy effective April 4, 1995. She allegedly did not become aware of the misrepresentation in her application until after she was diagnosed with stomach cancer in August 1995 and Time rescinded the policy. Brandt was entitled to allege and prove her claims against Time under the law as it existed on the effective date of her policy. Thus, we conclude that the trial court erroneously applied the amended version of section 154 of the Insurance Code in this action, and we instruct the trial court on remand to apply that version of section 154 in effect at the time Brandt was issued her policy.

For the foregoing reasons, we affirm the trial court's dismissal of counts IX and X in appeal No. 1—97—2913. In appeal No. 1—98—

0143, we reverse summary judgment on counts I and II and remand for further proceedings consistent with this opinion.

No. 1—97—2913, Affirmed.
No. 1—98—0143, Reversed and remanded.

McNAMARA, J., concurs.

JUSTICE WOLFSON, specially concurring:

I write this special concurring opinion to express my disagreement with the majority's direction to the trial judge that the 1996 amendment to section 154 of the Insurance Code will not apply on remand.

The majority launches a preemptive strike at the anticipated contention or, as the majority refers to it, the "simplistic argument" that applying the amendment prospectively "amounts to sanctioning the notion that Brandt had a vested right to lie in order to obtain insurance." 302 Ill. App. 3d at 170. Unfortunately, like the British at Singapore, the majority aims its guns in the wrong direction.

Having cited *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 664 N.E.2d 36 (1996), the majority then proceeds to ignore its teaching, instead constructing a contract theory never suggested in the trial court or in this court. For that reason alone the majority's absorption of statute theory is inappropriate in this case. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536, 662 N.E.2d 1248 (1996).

*Armstead* tells us "the better approach is to apply the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right." *Armstead*, 171 Ill. 2d at 289.

The real question is whether Brandt had a vested right to receive a policy with the written application attached. The statute in effect at the time the policy was issued said the application must have been attached if the insurance company were to defend on the basis of the insured's material misrepresentation. The statute in effect at the time the trial judge ruled on the summary judgment motion eliminated the attachment requirement. The judge applied the amended version.

The amended section 154 did not eliminate the requirement that there be a written application containing the material misrepresentation being relied on by the insurance company to defeat coverage. It eliminated the need to attach the application to the policy. It is the act of attachment that the majority elevates to a presumed contract term.

The trial judge did not apply the amended statute retroactively. A retroactive change in the law is "one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." *Armstead*, 171 Ill. 2d at 290.

*Armstead* gives us a working definition of a ":vested right." It is a "complete and unconditional demand or exemption that may be equated with a property interest." *Armstead*, 171 Ill. 2d at 291. The court held the plaintiff did not have the vested right to register its underground storage tanks pursuant to the Gasoline Storage Act (430 ILCS 15/4(b)(1)(A) (West 1992)) as it existed before an amendment to the Act. The reason:

"However, there is no vested right in the mere continuance of a law. [Citation.] The legislature has an ongoing right to amend a statute. [Citation.] In addition, the change in the statute did not create a new obligation or duty with respect to a past transaction." *Armstead*, 171 Ill. 2d at 291.

There is nothing new about the idea that the legislature may give and the legislature may take away. For example, a statutorily created dramshop action for loss of support could be eliminated by a repealing statute enacted after the injury took place. *Cruz v. Puerto Rican Society*, 154 Ill. App. 3d 72, 76, 506 N.E.2d 667 (1987). And a settlement agreement in a divorce case, negotiated in reliance on an existing statute concerning the power of courts to modify periodic alimony provisions, was held to be subject to an amended statute that precluded modification. *In re Support of Josic*, 78 Ill. App. 3d 347, 397 N.E.2d 204 (1979).

In *Cruz* and *Josic* the pivotal fact was that the claimed right was created by statute and was not enshrined in common law.

The amendment to section 154 did not create any new obligations or duties with respect to a past transaction, that is, the insurance policy. Nor did it effect a complete and unconditional demand or exemption that may be equated with a property interest. The policy remained the same. All that changed was a procedural bar to an insurance company claiming the insured's material misrepresentation bars coverage. In short, the previous requirement that the written application containing the alleged material misrepresentation be attached to the policy does not fit within *Armstead*'s definition of a vested right.

Section 154 was not repealed. It was reenacted with the attachment requirement intentionally omitted. I believe that was a considered judgment by the legislature, a decision that, on balance, depriving an insurance company of its defense because of a failure to attach was extracting too high a price. It is the contents of the written application that matter. If a material misrepresentation is written down by the insured or the insured's agent, what does it matter that the application was not attached to the policy? The insured is charged by law with knowing what is in it.

Recognizing that it has to find a vested right somewhere, the ma-

jority revives a time-honored fiction: Statutory provisions applicable to insurance policies that are in effect at the time the policy is issued are treated as part of the agreement.

I do not challenge the notion that "all contracts are presumed to have been executed in the light of existing law." *Smiley v. Estate of Toney*, 100 Ill. App. 2d 271, 276, 241 N.E.2d 116 (1968).

The presumption might be useful when deciding which statute applies to: uninsured motorist protection (*Estate of Toney*, 100 Ill. App. 2d 271, 241 N.E.2d 116); ways of computing time to do an act (*McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 582 N.E.2d 1313 (1991)); the right of condominium owners to cancel a lease agreement during a certain period (*S&D Service, Inc. v. 915-925 W. Schubert Condominium Ass'n*, 132 Ill. App. 3d 1019, 478 N.E.2d 478 (1985)); and the time limitation expressly contained in the policy for filing a lawsuit that seeks coverage for a theft loss (*Weisberg v. Royal Insurance Co.*, 124 Ill. App. 3d 864, 464 N.E.2d 1170 (1984)).

It seems to me the presumption of incorporation was intended to make a contract complete, inserting statutory provisions where required for public policy purposes or to supply a term that should have been in the contract but was omitted.

I suspect Time and Brandt would be surprised to learn they bargained for a contract term requiring attachment to the policy of an application containing a materially false statement.

No Illinois case has held, until now, that the attachment provision of old section 154 was presumed to be a term of the contract. There is another principle of law that should be used here: applying an amendment of a statute to a prior relationship "creates a problem only if [it] operates unfairly against a litigant who justifiably acted in reliance on the prior law." *Nelson v. Miller*, 11 Ill. 2d 378, 383, 143 N.E.2d 673 (1957). See *Clouse v. Heights Finance Corp.*, 156 Ill. App. 3d 975, 510 N.E.2d 1 (1987) (amended statutory penalty provision of Consumer Installment Loan Act (Ill. Rev. Stat. 1985, ch. 17, par. 5401 *et seq.*) applied to loan transactions entered into before the amendment because it is a change in remedy, not substance); *Winter & Hirsch, Inc. v. Passarelli*, 122 Ill. App. 2d 372, 259 N.E.2d 312 (1970) (amended statute providing for penalties for usurious rates of interest applied to pre-amendment loan transaction because it was a change in remedy). See also *Dardeen v. Heartland Manor, Inc.*, 297 Ill. App. 3d 684, 696 N.E.2d 1279 (1998).

If the majority is right when it holds the former section 154 attachment requirement is an essential term of the contract, it should take the next inevitable step: declare that applying the amended statute in this case unconstitutionally impairs the obligation of contract.

See Ill. Const. 1970, art. I, § 16. The fact that the constitutional issue was not raised by the parties should not deter the majority. Neither was the term of the contract theory. The argument, of course, falls of its own weight.

Nobody suggests Brandt was acting in reliance on the pre-amendment attachment requirement. There is nothing unfair about applying the amended section 154 to the unattached written application in this case. Time seeks to assert a remedy it clearly is entitled to—a material misrepresentation used to obtain coverage should defeat that coverage. That, too, is a firmly rooted principle of law. *Metropolitan Life Insurance Co. v. Moravec*, 214 Ill. 186, 73 N.E. 415 (1905).

Here, the majority correctly observes that "the primary purpose of the pre-amendment statute was to allow for objective evidence of negotiations at the time of application for the protection *of the insured* from possible frauds by insurance agents in falsifying answers given *by the insured* when applying for insurance. See 215 ILCS 5/154 (West 1994); *Gibraltar Casualty Co. v. A. Epstein & Sons, International, Inc.*, 206 Ill. App. 3d 272, 277, 562 N.E.2d 1039 (1990)." (Emphasis in original and added.) 302 Ill. App. 3d at 170.

But the majority's attachment-requirement-is-part-of-contract theory does more than that. Even if the trier of fact finds Ruth was Brandt's agent when the application was filled out, Brandt gets protection from her own fraud unless the jury also finds the written application was attached to the policy when sent to Brandt. That is not protecting the insured. That is empowering the insured to tell lies in order to obtain insurance, something more than a "simplistic argument."

There is nothing unfair about allowing the insurance company to assert its defense if the jury were to find Ruth was acting as Brandt's agent and the written application was not attached. After all, Brandt admitted she received the blank application with her policy. It is easy to read. It clearly says if the answer to question 4 (prior treatment for diabetes) is YES, she gets no coverage.

Obviously, if the jury were to find Ruth was acting as Time's agent when the application was submitted, Time should and would be estopped from asserting its material misrepresentation defense. See *Boyles v. Freeman*, 21 Ill. App. 3d 535, 315 N.E.2d 899 (1974). But if Ruth was acting as Brandt's agent, there is no legitimate interest, statutory or social, in protecting her right to make material misrepresentations on her application. Our supreme court has said: In ascertaining the legislature's intent, this court has a duty to avoid a construction of the statute that would defeat the statute's purpose or

yield an absurd or unjust result. See *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 479, 687 N.E.2d 1021 (1997).

I fear that has happened in this case.