**In re Barbara WITT, Debtor.**

**Gerald R. Miller, Trustee, Plaintiff,**

**v.**

**Grace Fellowship, Inc., an Oklahoma Corporation, Defendant.**

**Bankruptcy No. 97–03986–M.
Adversary No. 97–0402–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

March 10, 1999.

---

Gerald R. Miller, Muskogee, OK, for Plaintiff.

Michael James King, Tulsa, OK, for Defendant.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion for Summary Judgment and Brief in Support (the "Motion") filed by Gerald R. Miller, Trustee and Plaintiff herein ("Miller" or "Trustee"), and the Response to the Motion (the "Response")

filed by Defendant Grace Fellowship, Inc., an Oklahoma Corporation ("Grace"). In the Motion, Miller seeks a determination that both the Religious Freedom Restoration Act, 42 U.S.C.A. § 2000bb *et seq.* (West 1998) (the "Restoration Act") and the Religious Liberty and Charitable Donation Protection Act of 1998, Public Law 105–183, 112 Stat. 517 (the "Liberty Act") are unconstitutional. Miller also seeks an order of this Court avoiding certain transfers made by Barbara Witt, Debtor herein ("Debtor" or "Witt") to Grace in the four (4) years prior to the filing of this bankruptcy case. In the Response, Grace seeks summary judgment against Miller, and asks that this action be dismissed with prejudice. In addition, the United States of America has supplied this Court with its memorandum supporting the constitutionality of the Restoration Act and the Liberty Act.[1] For the reasons set forth herein, both requests for summary judgment are denied. However, pursuant to Fed.R.Civ.P. 56(d) and Bankruptcy Rule 7056, the Court finds that certain material facts in this adversary proceeding exist without substantial controversy, and holds such facts as established between Miller and Grace for the purposes of this litigation.

The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).[2] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). The issues raised by the Motion and Response are core proceedings as contemplated by 28 U.S.C. § 157(b)(2)(H).

### Summary Judgment Standard

Summary judgment is proper where " 'there is no genuine issue as to any material fact.' " *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable in this proceeding by Fed.R.Bank.P. 7056.

The United States Court of Appeals for the Tenth Circuit has ruled that "[e]ntry of summary judgment is mandated, after an adequate time for discovery and upon motion, 'against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Aldrich Enterprises, Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991), *rehearing denied* October 4, 1991 (citation omitted); *accord, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Summary judgment is only appropriate if the facts set forth by the movant are properly supported with admissible evidence and the facts affirmatively show that the movant is entitled to judgment on those facts as a matter of law. *See* Fed.R.Civ.P. 56(e).

If a case cannot be disposed of in its entirety on a motion for summary judgment, the trial court is authorized to determine what facts, if any, "exist without substantial controversy." The court is authorized to make such a determination "by examining the pleadings and evidence before it and by interrogating counsel." *See* Fed.R.Civ.P. 56(d); *see also* Fed.R.Bankr.P. 7056. Those facts are then "deemed established" for purposes of trial. *Id.*

### Findings of Fact

The Court finds that no genuine dispute exists as to the following material facts:

---

1. On October 21, 1998, this Court certified the issue of the alleged unconstitutionality of the Restoration Act and the Liberty Act to the Attorney General of the United States of America in accordance with 28 U.S.C. § 2403(a) (West 1999). The United States sought and obtained two extensions of time to file a memorandum outlining its position. Said memorandum was received by this Court on February 23, 1999.

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

1. Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on August 26, 1997.

2. At the time of the filing of her bankruptcy case, Debtor was a member of Grace.

3. Grace is a non-profit religious corporation, incorporated under the laws of the State of Oklahoma.

4. Grace is recognized as a tax exempt organization under § 501(c)(3) of the Internal Revenue Code.

5. During the time period from August 26, 1993, through August 26, 1997, Debtor gave the total sum of $52,160.75 to Grace in the form of cash contributions.

6. During the time period from August 26, 1996, through August 26, 1997, Debtor gave the total sum of $6,800.00 to Grace in the form of cash contributions. This $6,800.00 is included in the $52,160.75 identified in Paragraph 5 above.

Pursuant to Fed.R.Civ.P. 56(d) and Bankruptcy Rule 7056, the Court finds that these material facts exist without substantial controversy, and are established for the purposes of this litigation.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

The Trustee has brought this action seeking to avoid: (1) the transfer of $52,160.75 by Witt to Grace in the four years prior to the bankruptcy filing using the powers granted to him under § 544(a) of the Bankruptcy Code; or, in the alternative (2), the transfer of $6,800.00 by Witt to Grace in the year prior to the bankruptcy filing under § 548(a)(2) of the Bankruptcy Code. Certain limitations have been placed on the Trustee's powers under these sections as a result of the enactments of the Restoration Act and the Liberty Act by Congress. Miller argues that any limitations on his avoiding powers which benefit religious institutions such as Grace are unconstitutional. Grace argues to the contrary. In order for this matter to proceed, the Court must determine whether either the Restoration Act or the Liberty Act is constitutional. The effect of such a determination will be to narrow the issues remaining to be resolved at trial.

### Substance of the Liberty Act

On June 19, 1998, the Liberty Act was passed by Congress. The Liberty Act severely restricts the ability of a bankruptcy trustee to avoid pre-petition transfers by debtors to charitable institutions, including but not limited to religious entities through certain amendments to § 544 and § 548 of the Bankruptcy Code.[3] Under the terms of

---

**3.** The Liberty Act amended § 548 of the Bankruptcy Code to read as follows (additions to the statute are underlined):

*548. Fraudulent transfers and obligations*

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

(2) A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which—

(A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

(B) the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

the Liberty Act, a bankruptcy trustee may not avoid a transfer by a debtor to a charitable institution if the transfer does not exceed fifteen per cent (15%) of the debtor's gross annual income in the year the contribution was made. A contribution which exceeds

(b) The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

(B) a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

(C) a repo participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment; and

(D) a swap participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer.

(3) In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution—

(A) is made by a natural person; and

(B) consists of—

(I) a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

(ii) cash.

(4) In this section, the term "qualified religious or charitable entity or organization" means—

(A) an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

(B) an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

§ 548 (emphasis added). Similar amendments were made to § 544 of the Bankruptcy Code, which now reads as follows (additions to the statute once again underlined):

*544. Trustee as lien creditor and as successor to certain creditors and purchasers*

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.

§ 544 (emphasis added).

fifteen per cent (15%) of the debtor's gross annual income in the year the contribution was made may not be avoided if it was consistent with debtor's prior charitable contribution practices. Any transfer made with the actual intent to hinder, delay or defraud a creditor of the debtor remains subject to avoidance. The amendments to §§ 544 and 548 apply "to any case brought under an applicable provision of title 11, United States Code, that is pending or commenced on or after the date of the enactment of this Act." *Liberty Act,* § 5.

### Constitutionality of the Liberty Act

The Trustee offers two arguments in support of his claim that the Liberty Act is unconstitutional. His primary argument is that the Liberty Act constitutes a violation of the Establishment Clause contained in the First Amendment.[4] In addition, Miller argues that retroactive application of the Liberty Act to this case constitutes a taking in violation of the Fifth Amendment. After a thorough review of the arguments and authorities presented by the parties and the United States, this Court finds the Liberty Act to be constitutional.

 The United States Supreme Court, in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (hereafter *"Lemon"*), set out a three part test to be used to determine whether a particular statute violates the Establishment Clause of the First Amendment.

In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.' *Walz v. Tax Commission,* 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970).

Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education v. Allen,* 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.' *Walz, supra,* at 674, 90 S.Ct. at 1414.

*Id.* at 612–613, 91 S.Ct. 2105. Upon examination, the Liberty Act satisfies all three prongs of the *Lemon* test.

The United States Supreme Court has recognized that "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (hereafter *"Amos"*). There can be no doubt that all charities, not only religious ones, carry out valuable "missions" in our society. *See Walz v. Tax Commission of the City of New York,* 397 U.S. 664, 673, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (hereafter *"Walz"*) (noting that government of New York has determined that charities constitute "beneficial and stabilizing influences in community life and finds this classification useful, desirable and in the public interest."). Some promote education and the arts. Some attempt to protect the environment. Some feed and clothe the hungry and the disadvantaged. In order to perform those services, charitable institutions rely on funds donated to them. The Liberty Act "alleviate[s] significant governmental interference" with the ability of *all* charitable organizations to perform their "missions"; i.e., it reduces the likelihood that they will be the subject of litigation by a bankruptcy trustee seeking to recover donations previously received.[5] As such, it serves a secular purpose.

---

4. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I.

5. The Trustee spends a significant amount of time arguing that the legislative history of the Liberty Act evidences an improper purpose; the promotion of religion. The argument is not well taken. It is beyond dispute that the statute on its

█ The Liberty Act neither advances nor inhibits any particular religion nor does it favor religious institutions over and above other charitable institutions. *See Amos,* 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (requirement that statute have a secular purpose exists to prevent Congress "from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters"). Its provisions apply to all charitable institutions, not just religious organizations. In *Walz,* the Supreme Court considered the constitutionality of a New York law which granted an exemption from property taxation to property used for religious worship. As it found the law to be constitutional, the Court made the following observation:

> The legislative purpose of a property tax exemption is neither the advancement nor the inhibition of religion; it is neither sponsorship nor hostility. New York, in common with the other States, has determined that certain entities that exist in a harmonious relationship to the community at large, and that foster its 'moral or mental improvement,' should not be inhibited in their activities by property taxation or the hazard of loss of those properties for nonpayment of taxes. It has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of religious worship within a broad class of property owned by non-profit, quasi-public corporations which include hospitals, libraries, playgrounds, scientific, professional, historical and patriotic groups.

*Id.* at 672–673, 90 S.Ct. 1409. The mere fact that a religious organization is benefitted by the provisions of a statute does not render the statute unconstitutional. If that were the case, all of the laws allowing religious contributions to be taken as tax deductions, or granting tax-exempt status to religious organizations, would be unconstitutional. The

Liberty Act satisfies the second prong of the *Lemon* test.

Finally, the Liberty Act does not foster excessive government entanglement with religion. The Liberty Act keeps government (i.e., bankruptcy trustees and bankruptcy courts) out of the business of deciding whether religious institutions provide "value." It will: (1) significantly reduce litigation relating to monies received by charitable organizations; (2) limit the potential for discovery disputes relating to the turnover of books and records of charitable institutions; and (3) take charitable institutions out of the unenviable position of being guarantors of the solvency of their donors. In sum, the Liberty Act operates to separate church and state, not entangle them. As such, it is constitutional. *See Amos,* 483 U.S. at 339, 107 S.Ct. 2862 (holding as constitutional statute which "effects a more complete separation of the two [church and state] and avoids ... intrusive inquiry into religious belief").

The Court has no difficulty in applying the Liberty Act to this case; indeed, it is compelled to do so. The United States Supreme Court has recognized that a court is to "*apply the law in effect at the time it renders its decision,* unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *See Landgraf v. USI Film Products,* 511 U.S. at 277, 114 S.Ct. 1483, *quoting Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (emphasis added). Congress has unequivocally stated that the Liberty Act applies to all bankruptcy cases pending on June 18, 1998, the date of its enactment. Any presumption that legislation is not to be applied retroactively falls in the face of clear legislative intent to the contrary:

> We have frequently noted, and just recently reaffirmed, that there is a "presumption against retroactive legislation [that] is

---

face treats religious and non-religious charities equally. Where the statute is plain upon its face, resort to the legislative history is improper. *See e.g., United States v. Ron Pair Enterprises,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("where ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' ") (citation omit-

ted); *see e.g., Schwegmann Bros.,* 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., and Minton, J., concurring) ("*Resort to legislative history is only justified where the face of the Act is inescapably ambiguous,* and then I think we should not go beyond Committee reports, which presumably are well considered and carefully prepared.") (emphasis added).

deeply rooted in our jurisprudence." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). "The 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Ibid.* (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (1990) (SCALIA, J., concurring)). Accordingly, we apply this time-honored presumption *unless Congress has clearly manifested its intent to the contrary.* 511 U.S., at 268, 114 S.Ct., at 1498–1499.

*Hughes Aircraft Co. v. U.S. ex. rel. Schumer*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (emphasis added); *see also Landgraf v. USI Film Products*, 511 U.S. 244, 264, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("[w]hen Congressional intent is clear, it governs") (citation omitted). No legitimate purpose would be served by this Court's defiance of incontrovertible Congressional intent.

■■■ The Trustee argues that application of the Liberty Act to this adversary proceeding will constitute a taking of vested rights of action under §§ 544 and 548 of the Bankruptcy Code. The argument lacks merit. The avoidance powers of a bankruptcy trustee are creatures of statute. They are subject to amendment or repeal at any time. The Trustee has no vested right in a statutory remedy unless and until he secures a judgment based upon that statute. *See McCullough v. Virginia*, 172 U.S. 102, 123–124, 19 S.Ct. 134, 43 L.Ed. 382 (1898) ("It is not within the power of a legislature to take away rights which have been once vested by a judgment. *Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to dis-*

*turb the rights created thereby ceases."*) (emphasis added); *see also Johnston v. Cigna Corp.*, 14 F.3d 486, 491 (10th Cir.1993) (quoting *McCullough v. Virginia* and noting that it "remains valid law"). This adversary proceeding has not yet gone to judgment; accordingly, the Trustee has no vested cause of action under either § 544 or § 548 as they existed prior to the passage of the Liberty Act.[6]

The Religious Liberty and Charitable Donation Protection Act of 1998, 112 Stat. 517, is constitutional. As a result, the Motion for Summary Judgment filed by the Trustee must be denied. The next step is for the Court to determine whether the undisputed facts presently before it support the motion of Grace for summary judgment.

*Application of the Liberty Act to the Present Case*

■■ Under §§ 544 and 548 of the Bankruptcy Code as amended by the Liberty Act, in order to determine whether a trustee may avoid a pre-petition transfer of a potential charitable contribution, a court must determine: (1) whether the recipient qualified as a "charitable entity" under §§ 170(c)(1) or (2) of the Internal Revenue Code; and (2) if so, whether the amount of the contribution was less than or equal to fifteen per cent (15%) of the debtor's gross annual income or was in an amount consistent with debtor's past giving practices. If the answer to (1) and either part of (2) is in the affirmative, the Trustee may not avoid the transfers made by Debtor to Grace.[7] If the recipient is not a "charitable entity," or if the amount given exceeds fifteen per cent (15%) of the debtor's gross annual income or is in excess of the debtor's charitable giving history, all or part of the transfer may be subject to avoidance. Section 170(c)(2) defines as a charitable entity a corporation "organized and operated exclusively for religious, charitable, scientific, lit-

---

**6.** The Court also finds that application of §§ 544 and 548 as amended by the Liberty Act to this adversary proceeding is fair and equitable given the procedural posture of this case. In 1998, the parties to this action agreed to delay resolution of this litigation because of the pending passage of the Liberty Act, which has now come to fruition. The Trustee cannot claim that he has been unfairly prejudiced because the Court has done that which he has asked the Court to do.

**7.** The Trustee has not alleged that any of the transfers by Debtor to Grace were made with any actual intent to hinder, delay or defraud creditors of the Debtor.

erary or educational purposes." I.R.C. § 170(c)(2)(B).

Under the undisputed facts in the present case, Grace is a charitable entity. It is a non-profit corporation formed for religious purposes. Thus, the first test under the Liberty Act is met. The Court does not currently have before it sufficient information to determine whether Witt's contributions to Grace are less or equal to fifteen per cent (15%) of her gross annual income for the years in question, or whether her giving to Grace is consistent with her past charitable practices. As a result, the cross-motion for summary judgment by Grace must be denied.

*Constitutionality of the Restoration Act*

Having determined that the Liberty Act is constitutional and applicable to the present case, the Court need not reach the issue of whether the Restoration Act is constitutional. Notwithstanding, the Court notes that the issue of the constitutionality of the Restoration Act as applied to federal law was recently determined by the United States Court of Appeals for the Eighth Circuit in *In re Young,* 141 F.3d 854 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 43, 142 L.Ed.2d 34 (1998) (hereafter *"Young "*). In *Young,* the Restoration Act was found to be constitutional as it applied to *federal* law. Should the parties or any reader of this opinion remain curious about the constitutionality of the Restoration Act as it applies to federal law, a review of *Young* is recommended.

### Conclusion

The Motions for Summary Judgment filed by the Trustee and Grace are denied. Notwithstanding, there are certain material facts which are not in genuine dispute. Those facts will be considered as established for purposes of trial in this action.

A separate judgment is entered concurrent with this Memorandum Opinion.

### *ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT*

THIS MATTER comes before the Court pursuant to the Motion for Summary Judgment and Brief in Support filed by Gerald R. Miller, Trustee and Plaintiff herein ("Miller" or "Trustee"), and the Response to the Motion (the "Response") filed by Defendant Grace Fellowship, Inc., an Oklahoma Corporation ("Grace"). In the Motion, Miller seeks a determination that both the Religious Freedom Restoration Act, 42 U.S.C.A. § 2000bb *et seq.* (West 1998) and the Religious Liberty and Charitable Donation Protection Act of 1998, Public Law 105–183, 112 Stat. 517 are unconstitutional. Miller also seeks an order of this Court avoiding certain transfers made by Barbara Witt, Debtor herein to Grace in the four (4) years prior to the filing of this bankruptcy case. In the Response, Grace seeks summary judgment against Miller, and asks that this action be dismissed with prejudice. The Court, having fully reviewed the matter, for the reasons set forth in the Memorandum Opinion filed concurrently herewith, determines that genuine issues of material fact exist in this case. Accordingly, the Motions for Summary Judgment filed by both Miller and Grace must be denied.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Gerald R. Miller, Trustee be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Grace Fellowship, Inc., an Oklahoma Corporation, be, and the same hereby is, denied.

IT IS FURTHER ORDERED that pursuant to Fed.R.Civ.P. 56(d) and Bankruptcy Rule 7056, the Court finds that the following material facts exist without substantial controversy, and are established for the purposes of this litigation:

1. Barbara Witt, Debtor herein, ("Debtor") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on August 26, 1997.

2. At the time of the filing of her bankruptcy case, Debtor was a member of Grace Fellowship, Inc., an Oklahoma Corporation ("Grace").

3. Grace is a non-profit religious corporation, incorporated under the laws of the State of Oklahoma.

4. Grace is recognized as a tax exempt organization under § 501(c)(3) of the Internal Revenue Code.

5. During the time period from August 26, 1993, through August 26, 1997, Debtor gave the total sum of $52,160.75 to Grace in the form of cash contributions.

6. During the time period from August 26, 1996, through August 26, 1997, Debtor gave the total sum of $6,800.00 to Grace in the form of cash contributions. This $6,800.00 is included in the $52,160.75 identified in Paragraph 5 above.

IT IS FURTHER ORDERED that the Clerk of this Court shall set the above-referenced adversary proceeding for a preliminary pre-trial conference.