In re ABC–NACO, INC, et al., Debtors.

The Official Committee of Unsecured Creditors of ABC–NACO, Inc., ex rel. ABC–NACO, Inc., Plaintiff,

v.

Bank of America, N.A., individually and as agent and letter of credit issuing lender under the Credit Agreement dated as of February 19, 1999, as modified, amended or restated thereafter, Defendant.

Bankruptcy No. 01 B 36484.
Adversary No. 02 A 00204.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 13, 2005.

Barry Sullivan, Donald R. Cassling, Catherine Steege, Andrew S. Nicoll, Jenner & Block LLP, Chicago, IL, for Plaintiff.

David M. Schiffman, Kenneth E. Wile, Jennifer Peltz, Sidley, Austin, Brown & Wood LLP, Chicago, IL, for Defendant.

J. Christopher Kohn, Tracy J. Whitaker, Matthew J. Troy, U.S. Department of Justice, Washington, D.C., for Intervenor United States of America.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This adversary proceeding is a *Deprizio*-type" preference action—brought to avoid transfers of a debtor's property, made between 90 days and one year before the debtor's bankruptcy filing, in connection with a loan guaranteed by the debtor's insiders. The proceeding is before the court on the post-trial motion of defendant Bank of America for judgment as a matter of law, pursuant to § 1213 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23 ("BAPCPA").

As the parties acknowledge, § 1213 abrogates "*Deprizio*-type" causes of action. Moreover, and critically, § 1213 applies to all cases pending at the time of BAPCPA's enactment. At the time of BAPCPA's enactment, this proceeding was pending—it had been tried, but judgment had not yet been entered. Thus, by its terms, § 1213 denies the recovery sought here. The only ground the plaintiff offers for not granting judgment to the Bank under § 1213 is that its retroactive application is unconstitutional, either as an uncompensated taking or as a denial of substantive due process.

As discussed below, the retroactive application of § 1213 is not unconstitutional, and so the Bank is entitled to judgment on its motion.

## Jurisdiction

District courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has referred its bankruptcy cases to the bankruptcy court of this district. When presiding over a referred case, the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments in core proceedings within the case. The pending motion is a core proceeding under 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid and recover preferences). The court may therefore enter a final judgment. *In re Smith,* 848 F.2d 813, 816 (7th Cir.1988).

## Factual Background

The current motion raises a purely legal question regarding the constitutionality of § 1213 of BAPCPA. The relevant background facts are not in dispute.

ABC–NACO, Inc. ("ABC–NACO"), the debtor, was a supplier of products to the rail industry. (Pl.Ex. 12 (Stipulation of Undisputed Facts) at ¶ 6.) Before October 30, 2000, ABC–NACO entered into a revolving $200 million loan agreement with Bank of America, N.A. and several other lenders (collectively, the "Bank"). (*Id.* at ¶ 7.) In connection with this loan, ABC–NACO's subsidiaries executed guarantees in favor of the Bank. (*Id.* at ¶ 9.) The subsidiary guarantors were "insiders" of ABC–NACO within the meaning of 11 U.S.C. § 101(31). (*Id.* at ¶ 10.) The Bank was not an insider of ABC–NACO. (*Id.*)

On October 30, 2000, ABC–NACO and the Bank amended the loan agreement. In connection with the amendment, ABC–NACO granted the Bank liens on five previously unencumbered parcels of real property. (Pl.Ex. 12 at ¶ 15.) On May 2, 2001, the parties amended the loan agreement again, and this time ABC–NACO granted the Bank several additional, subordinate liens on other real property. (*Id.* at ¶¶ 24, 27.) All of the liens were granted more than 90 days but less than one year before ABC–NACO's bankruptcy filing, which took place on October 18, 2001. (*Id.* at ¶¶ 1, 33.) The parties acknowledge that ABC–NACO was insolvent at the time the liens were granted. (*Id.* at ¶ 18.)

## Procedural Background

On October 26, 2001, the United States Trustee for the Northern District of Illinois appointed the members of an Official Committee of Unsecured Creditors of ABC–NACO, Inc. ("the Committee"). (*Id.* at ¶ 2.) On November 6, 2001, ABC–NACO, as debtor in possession, obtained a financing order that gave the Committee standing to challenge the validity of liens asserted by prepetition lenders. (Bk. Docket No. 167 at ¶¶ 25–29.) On February 28, 2002, the Committee instituted this adversary proceeding seeking to avoid the mortgage liens granted to the Bank in 2000 and 2001 as preferential transfers pursuant to 11 U.S.C. § 547(b)(4)(B) and to require the Bank to turn over any proceeds received from liquidating the properties subject to these liens. (Adv. Docket No. 1.) At the conclusion of a trial held on February 16, 2005, the court set a briefing schedule calling for a ruling on May 2, 2005. On April 20, 2005, BAPCPA was enacted. The following day the Bank filed the pending motion for judgment as a matter of law under § 1213 of BAPCPA. (Docket No. 129.) The United States has intervened in the proceeding pursuant to 28 U.S.C. § 2403. (Docket No. 157.)

## Legal Conclusions

### A. Section 547, In re Deprizio, and § 1213 of BAPCPA

The underlying legal issue in this case is the applicable preference period: how long before the filing of a bankruptcy case is a transfer of the debtor's property on account of an antecedent debt subject to avoidance as a preference? Section 547(b) generally makes transfers voidable as preferences if they occurred "on or within 90 days" of the bankruptcy filing, but it provides an extended preference period of one year for a transfer made "to or for the benefit of a creditor" if "such creditor at the time of such transfer was an insider."

In *Levit v. Ingersoll Rand Fin. Corp. (In re Deprizio)*, 874 F.2d 1186, 1200–01 (7th Cir.1989) (*"Deprizio"*), the Seventh Circuit construed § 547(b) to allow avoidance of a loan payment made within the extended preference period, even though the payment was made to a non-insider lender, because an insider had guaranteed the loan. The court reasoned (1) that for purposes of § 547(b), the payment to the lender resulted in a "benefit" to the insider-guarantor by reducing the guarantor's liability, and (2) that the guarantor was a "creditor" because it held a contingent claim against the debtor—the subrogation right that would come into existence if the guarantor was required to pay on the guarantee. *Id.* at 1190 (citing 11 U.S.C. § 101(4)(A), (9)). *Deprizio* also held that

pursuant to § 550(a) the trustee could recover either the transferred property or its value from the "initial transferee"—the lender—as well as from the guarantor, the "entity for whose benefit such transfer was made." *Id.*[1] Thus, the trustee had the option to collect from the lender, guarantor, or both, "subject only to the proviso in § 550(c) that there can be but one satisfaction." *Id.* at 1194.

In 1994, Congress added to the Code a new § 550(c), intended to overrule *Deprizio*. *See* H.Rep. No. 835 at 45 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3353. As amended, § 550(c) provides as follows:

> (c) If a transfer made between 90 days and one year before the filing of the petition—
>
> (1) is avoided under section 547(b) of this title; and
>
> (2) was made for the benefit of a creditor that at the time of such transfer was an insider;
>
> the trustee may not recover under subsection (a) from a transferee that is not an insider.

11 U.S.C. § 550(c). However, the amendment to § 550 failed to address another possible remedy—where the property interest transferred was a lien, the preference plaintiff might merely seek to avoid the transfer under § 547(b) and preserve the value of the lien for the bankruptcy

---

1. At the time, § 550 provided that:

 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547, ... the trustee may recover, for the benefit of the estate, the property transferred or if the court so orders, the value of such property, from—
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or
 (2) any immediate or mediate transferee of such initial transferee.

 (b) The trustee may not recover under section (a)(2) of this section from—
 (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
 (2) any immediate or mediate good faith transferee of such transferee.
 (c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.
 11 U.S.C. § 550 (1989).

estate under § 551.[2] In this situation, no return of the transferred property or its value under § 550 would be necessary.

Section 1213 of BAPCPA adds a new subsection to § 547 that addresses this remaining ground of recovery under *Deprizio:*

> If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section *only with respect to the creditor that is an insider.*

11 U.S.C. § 547(j) (emphasis added). The House Report emphasizes that the intent of this new provision is a more complete elimination of what it calls "the *Deprizio* problem":

> Section 202 of the Bankruptcy Reform Act of 1994 addressed the *DePrizio* [sic] problem by inserting a new section 550(c) into the Bankruptcy Code to prevent avoidance or recovery from a noninsider creditor during the 90–day to one-year period even though the transfer to the noninsider benefitted an insider creditor. The 1994 amendments, however, failed to make a corresponding amendment to section 547, which deals with the avoidance of preferential transfers. As a result, a trustee could still utilize section 547 to avoid a preferential lien given to a noninsider bank, more than 90 days but less than one year before bankruptcy, if the transfer benefitted an insider guarantor of the debtor's debt. Accordingly, section 1213 of the Act makes a perfecting amendment to section 547 to provide that if the

trustee avoids a transfer given by the debtor to a noninsider for the benefit of an insider creditor between 90 days and one year before filing, that avoidance is valid only with respect to the insider creditor. Thus both the previous amendment to section 550 and the perfecting amendment to section 547 protect the noninsider from the avoiding powers of the trustee exercised with respect to transfers made during the 90– day to one year pre-filing period.

H.R.Rep. No. 109–31, at 144 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 202–03.

Furthermore, Congress determined that this "perfecting amendment" should have immediate effect. Section 1213(b) provides that "[t]he amendments made by this section shall apply to any case that is pending or commenced on or after the date of enactment of this Act," and the legislative history confirms that retroactive application was intended: "This provision is intended to apply to any case, including any adversary proceeding, that is pending or commenced on or after the date of enactment of this Act." H.R.Rep. No. 109– 31, at 144 (2005).

Accordingly, by its terms, § 1213 of BAPCPA eliminates the Committee's pending avoidance action against the Bank, and the Committee does not contend to the contrary. Rather, the Committee argues that retroactive application of § 1213 to this proceeding is unconstitutional.

### B. The Committee's Constitutional Challenges to § 1213 of BAPCPA

■ There is nothing inherently unconstitutional about retroactive legislation.

---

**2.** Section 551 provides as follows:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d)

of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551 (2005).

Absent a specific constitutional impediment, the intent of Congress to apply a statute retroactively must be honored. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 267, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The specific constitutional provisions under which the Committee seeks to prevent retroactive application of § 1213 are the Takings and Due Process clauses of the Fifth Amendment. Neither clause, however, is offended by § 1213.

### 1. Unconstitutional Taking of Property

■ The Fifth Amendment to the Constitution provides that "private property [shall not] be taken ... without just compensation." U.S. Const. amend. V (the "Takings Clause"). To establish an unconstitutional taking, a litigant must show that it was deprived, without just compensation, of a vested property right. *See Landgraf,* 511 U.S. at 266, 114 S.Ct. 1483 ("The ... Takings Clause prevents the Legislature ... from depriving private persons of vested property rights...."); *Wyatt v. United States,* 271 F.3d 1090, 1097 (Fed.Cir.2001) ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation."). The Committee's Taking Clause arguments fail because the Committee cannot show that retroactive application of § 1213 affects any vested property right of ABC–NACO.

### a. The § 547(b) Cause of Action

■ The Committee does not contend that ABC–NACO had a perfected property interest in the *Deprizio*-type cause of action that the Committee has been pursuing, even though this cause of action is the only right directly affected by § 1213. The likely reason for the Committee's failure to claim an unconstitutional taking in this respect is a well-established principle

that an interest in a cause of action does not vest, for purposes of the Takings Clause, until judgment is entered.

The case most often cited in this connection is *McCullough v. Virginia,* 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898). In *McCullough,* the Supreme Court held that legislation aimed at preventing a taxpayer from collecting a tax refund from the State of Virginia pursuant to a previously-obtained, final judgment was unenforceable because "[i]t is not within the power of the legislature to take away rights which have been once vested by a judgment." *Id.* at 123, 19 S.Ct. 134. At the same time, however, the Supreme Court affirmed that "[l]egislation ... may abate actions pending," so that it is only "when those actions have passed into judgment" that "the power of the legislature to disturb the rights created thereby ceases." *Id.* at 123–24, 19 S.Ct. 134; *see also Johnston v. Cigna Corp.,* 14 F.3d 486, 491 (10th Cir.1993) (collecting authority for the proposition that "*McCullough* remains valid law").

The Seventh Circuit has repeatedly applied the *McCullough* principle. *See Tonya K. v. Bd. of Educ. of the City of Chicago,* 847 F.2d 1243, 1247–48 (7th Cir.1988) ("In civil litigation ... no person has an absolute entitlement to the benefit of legal principles that prevailed at the time the case began, or even at the time of the bulk of the litigation. The legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong.") (internal citations omitted); *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 876 (7th Cir.1976) (applying amendments to the Truth in Lending Act that first became effective during appeal, under "the reasoning that what Congress giveth, Congress can taketh away").

Finally, the *McCullough* principle is fully applicable to rights established by the

Bankruptcy Code. In *Miller v. Grace Fellowship, Inc. (In re Witt)*, 231 B.R. 92 (Bankr.N.D.Okla.1999), the court applied the principle to reject a trustee's claim that an amendment to the Code under the Religious Liberty and Charitable Donation Protection Act of 1998 restricting avoidance powers was an unconstitutional taking. *Id.* at 99. The *Witt* court found there was no taking because the adversary proceeding had not resulted in a judgment and the trustee had no vested cause of action under avoidance provisions of the Code as they existed before the passage of the Religious Liberty Act. *Id.*

Similarly, Congress' decision to eliminate the *Deprizio*-type action brought by the Committee against the Bank was not an unconstitutional taking because ABC–NACO's interest in the cause of action had not vested when § 1213 became effective.

b. *The Underlying Real Estate*

■ The Committee does not directly dispute the *McCullough* principle that there is no unconstitutional taking in retroactively abrogating a cause of action that has not resulted in a final judgment. Rather, the Committee argues that two other property interests were unconstitutionally taken from ABC–NACO by § 1213 of BAPCPA. First, the Committee argues that § 1213 deprived ABC–NACO of an interest that it held in the mortgaged real estate. Before the enactment of § 1213, the argument asserts, ABC–NACO's ownership interest in the mortgaged properties was "that of an absolute owner of unencumbered real estate" (Committee's Response [Docket No. 159] at 2); as absolute owner, ABC–NACO's rights "would include the right of possession and alienation (and all the value from the exercise of such rights)" (*id.* at 3); and § 1213 took these rights away from ABC–NACO by

giving the Bank a lien it otherwise would not have (*id.*).

■ This argument misconstrues the effect of the Bankruptcy Code's avoidance provisions. These provisions alter property interests established under non-bankruptcy law—but only through a judgment based on the provisions. There is no "automatic" reversal of avoidable transfers. Under applicable non-bankruptcy law, ABC–NACO held its real estate, prior to its bankruptcy filing, subject to the liens that it had granted to the Bank; after the filing, those liens, though subject to possible avoidance under § 547, remained valid. Thus, § 1213 of BAPCPA did not remove a property interest enjoyed by ABC–NACO. It removed a cause of action that might have resulted in ABC–NACO recovering a property interest.

This understanding of avoidance in bankruptcy is illustrated by *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir.1992). In *Colonial Realty*, the Second Circuit rejected an argument by a bankruptcy trustee much like the one made by the Committee here—that the debtor's estate included property that had been transferred to a third party in a transaction subject to avoidance. The court held that transferred property subject to recovery in an avoidance action is not property of the estate until it is actually recovered by the bankruptcy trustee. *Id.* at 131; *see also In re Saunders*, 101 B.R. 303, 304–06 (Bankr.N.D.Fla.1989); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D.Ill.1993); *but see In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983) (holding that the debtor has a "legal or equitable interest" in fraudulently transferred property).

*Colonial Realty* relied on the definition of "property of the estate" set out in § 541 of the Bankruptcy Code. It adopted the reasoning of the *Saunders* court that "if property that has been fraudulently transferred is included in the § 541(a)(1)

definition of property of the estate, then § 541(a)(3)"—which provides that property of the bankruptcy estate includes "[a]ny interest in property that the trustee recovers" under certain Code provisions, including § 550—"is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." *Colonial Realty*, 980 F.2d at 131 (internal quotation omitted). As the *Saunders* court explained, "The inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered." 101 B.R. at 305. Thus, "[u]ntil a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate." *Id.* Otherwise, "allowing the debtor to retain an interest, legal or equitable, in fraudulently transferred property conceivably places a cloud on the title of any property transferred by the debtor until there is a judicial determination that the transfer is not avoidable ... [a] result [that] was clearly not contemplated by Congress." *Id.*

■ This reasoning is consistent with the *McCullough* principle. A bankruptcy estate does not possess a property interest in transferred property, even though the transfer is subject to avoidance, until the estate obtains a judgment actually avoiding the transfer. Until that time, the estate holds only an unvested interest in a cause of action. Because no judgment avoiding the Bank's mortgages was entered prior to its enactment, § 1213 did not deprive ABC–NACO of any interest in real property.

### c. *Rights under the Mortgage Contracts*

■ In addition to the asserted real property interest, the Committee contends that the Takings Clause protected one other property interest of ABC–NACO—a contractual right, arising under its mortgages, to have preferential transfers avoided. Specifically, the Committee argues that under Illinois law the mortgage agreements contained an implied provision incorporating the Bankruptcy Code's avoidance provisions as they existed at the time the mortgages were granted. The Committee cites no specific authority for this proposition. It simply notes the general principle that "statutes and laws in existence at the time a contract is executed are considered part of the contract." *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 959 (7th Cir.2003); *see also Brandt v. Time Ins. Co.*, 302 Ill.App.3d 159, 235 Ill.Dec. 270, 704 N.E.2d 843, 850–51 (1998) (statutory provisions governing insurance policies that were in effect when a policy was issued are treated as part of the policy). Thus, the Committee argues, (1) that in each of the mortgages in question ABC–NACO and the Bank implicitly agreed that if ABC–NACO filed a bankruptcy case within one year of the date the mortgage, the mortgage would be voidable through a preference action in bankruptcy, and (2) that Congress could not change preference law in this regard without compensation for eliminating this contractual preference right.

This argument has several flaws. First, any implied contractual term would deal with the rights and obligations of the parties to the contract. The cases cited by the Committee provide examples of such implied terms. *Doctors Hospital*, 337 F.3d at 955, dealt with a contract for Medicaid reimbursement between the hospital and the State of Illinois, and the implied term was a right of the state to offset its reimbursement obligations with taxes that the hospital owed to the state. In *Brandt*, 235

Ill.Dec. 270, 704 N.E.2d at 849–50, the contract at issue was a health insurance policy, and the implied term was a right of the insured to have her application attached to the policy if misstatements in the application were to be a basis for the insurer denying coverage. Here, by contrast, the asserted implied term is not a right of either ABC–NACO or the Bank but rather a collective right of the claimants to a future bankruptcy estate of ABC–NACO, a right that could only be exercised by a bankruptcy trustee or some other party asserting the rights of the estate. There is no reason to think that an Illinois court would imply such third-party rights in a bilateral contract.

■ Second, even if Illinois law would find that a mortgage contract includes by implication existing law granting rights to the creditors of a bankruptcy estate, the contract would also include, by implication, Congress's constitutional power to "enact uniform Laws on the subject of Bankruptcies," a power that plainly encompasses the avoidance of preferences. U.S. Const., art. I, cl. 8; *see In re Dehon, Inc.*, 327 B.R. 38, 62–64 (Bankr.D.Mass.2005) (discussing the history of preference law in bankruptcy). In other words, if existing preference law is implicitly incorporated into ABC–NACO's mortgages, so is the power of Congress to make new preference law. *See Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 516, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938) ("Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservations of essential attributes of sov-

ereign power is also read into contracts as a postulate of the legal order.") (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413 (1934)).[3]

■ Finally, even if ABC–NACO and Bank had expressly provided in their mortgages that only existing preference law would be applicable, that provision would have been unenforceable. *See Connolly v. PBGC*, 475 U.S. 211, 223–24, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (" 'Contracts, however express, cannot fetter the constitutional authority of Congress.... Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them.' ") (quoting *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 307–308, 55 S.Ct. 407, 79 L.Ed. 885 (1935)). Numerous decisions have refused to enforce contractual provisions that attempted to define the treatment of the parties in bankruptcy. *See, e.g., Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987) (holding that a debtor may not "contract away the right to a discharge"); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 652 n. 7 (9th Cir. BAP 1998) (collecting decisions refusing to enforce prepetition waivers of "bankruptcy benefits" other than discharge); *Bank of Am. Nat'l Ass'n v. N. LaSalle St. Ltd. P'ship (In re 203 N. LaSalle St. P'ship)*, 246 B.R. 325, 331–32 (Bankr.N.D.Ill.2000) (holding that a creditor could not surrender its voting rights in bankruptcy as part of a pre-bankruptcy subordination agreement). ABC–NACO and the Bank could no more decide by contract that only current pref-

---

**3.** In *Wright*, the Supreme Court held that Section 75(s) of the Bankruptcy Act of 1933, extending the period of time for a debtor's redemption of foreclosed property, violated neither the Takings Clause nor the Tenth Amendment. In the latter context, the Court observed that "[b]ankruptcy proceedings constantly modify and affect the property rights

established by state law," and that "[a] familiar instance is the invalidation of transfers working a preference, though valid under state law when made." 304 U.S. at 517, 58 S.Ct. 1025. This observation emphasizes that parties to a contract have no basis for assuming that the preference law in effect at the time of the contract will not be changed.

erence law would apply to their dealings than they could decide by contract that no preference law at all would apply to their dealings.

Accordingly, ABC–NACO had no contractual right to the preference actions that existed at the time it granted mortgages to the Bank. Again, the Committee has failed to show a violation of the Takings Clause in the retroactive application of § 1213 of BAPCPA.

### 2. Violation of Due Process

 As an alternative to its Taking Clause argument, the Committee asserts that retroactive application of § 1213 would be a denial of substantive due process, violating the Fifth Amendment's provision that "[n]o person shall ... be deprived of life, liberty, or property without due process of law." Like any other legislative provision, a retroactive congressional amendment is consistent with substantive due process if the legislation is "rationally related to a legitimate legislative purpose." *PBGC v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). A party challenging legislation as a denial of substantive due process has the burden of showing that Congress acted irrationally in enacting the legislation. *See Deck v. Peter Romein's Sons, Inc.*, 109 F.3d 383, 387 (7th Cir.1997).[4]

The Committee argues that Congress' purpose in enacting § 1213 of BAPCPA is only sufficient to support prospective, not retroactive application. And indeed, one of the rationales supporting the abrogation of *Deprizio*-type preference actions, set out in H.R.Rep. No. 109–31, at 144 (2005),

is that limiting to 90–days the preference liability of lenders with insider guarantees may encourage lending supported by insider guarantees. This rationale, the Committee asserts, does not support retroactive application, since loans already made need no encouragement.

But Congress had at least two other reasons for enacting § 1213. The first was simply that lenders were never intended to have been subject to an extended preference period based on insider guarantees—that the relevant Code provisions were misconstrued by *Deprizio*, and the 1994 amendments inadvertently failed to overturn the decision completely. Thus, the House Report on BAPCPA, cited above, refers to § 1213 as "a perfecting amendment" to address the "*Deprizio* problem." Correcting legislative errors is a "benign and legitimate" rationale for retroactive application of a statute. *See Landgraf*, 511 U.S. at 267–68, 114 S.Ct. 1483.

The second reason is related to the first. If, as a matter of fairness, loans by non-insiders should not be subject to an extended preference period based on an insider guarantee, then retroactive application rationally promotes the purpose of preventing an inappropriate transfer of property from the lender to other creditors of the debtor's estate.

Since retroactive application of § 1213 has not been shown irrational, the Committee has failed to establish a denial of substantive due process under the Fifth Amendment.

---

4. In this connection, *R.A.Gray & Co.* quotes *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976): "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a pre-

sumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." 467 U.S. at 729, 104 S.Ct. 2709.

## Conclusion

For the reasons stated above, the Bank is entitled to judgment under § 1213 of BAPCPA. A separate order will be entered to that effect.