In re Dale JACKSON, Debtor.

Gary S. Jacobson, Chapter 7 Trustee for the Estate of Dale Jackson, Plaintiff,

v.

The Church of Manalapan, Inc., Defendant.

Bankruptcy No. 98–36884.
Adversary No. 99–5221.

United States Bankruptcy Court,
D. New Jersey.

March 31, 2000.

Stuart Brecher, Jacobson & Brecher, LLC, Mountainside, NJ, for the Trustee.

Theodore Liscinski, Lanfrit, Liscinski & Rosenwasser, Somerset, NJ, for The Church of Manalapan, Inc.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on the trustee's motion for summary judgment seeking the avoidance of the debtor's transfer of a $20,000 charitable contribution to the defendant as a fraudulent transfer. The issue is whether the debtor's donation of the funds in question to the defendant was consistent with the debtor's practices in making charitable contributions, so as to be exempt from avoidance as a fraudulent transfer under Bankruptcy Code section 548(a)(2). The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). This shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

The material facts in this adversary proceeding are not in dispute.

The Church of Manalapan (hereinafter "the church" or "the defendant") is a non-profit religious organization incorporated in 1994. Its principal place of business is located in Manalapan, New Jersey. Dale Jackson (hereinafter "Jackson" or "the debtor") is a member, vice president and trustee of the church.

Throughout his involvement with the church, Jackson has made numerous donations to both the church and various other charitable entities. A summary of Jackson's donations to the church, total charitable contributions between 1995 and 1998, income, and the percentage of income which was donated to charitable entities is as follows:

| | 1995 | 1996 | 1997 | 1998 |
|---|---|---|---|---|
| Church of Manalapan | 7,628 | 8,300 | 4,645 | 25,700 |
| Total Charitable Gifts | 14,546 | 15,610 [1] | 7,545 | 25,700 |
| Income | 87,159 | 56,705 | 103,073 | 26,948 |
| Percentage | 16.7 | 27.5 | 7.3 | 95.4 |

---

1. This figure was taken from the debtor's 1996 federal income tax return. The debtor's affidavit in opposition to this motion reports total charitable contributions for 1996 as

On May 29, 1998, Jackson filed a voluntary petition for relief under chapter 7 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). Within one year prior to filing his petition, Jackson had made total charitable donations of $22,650 to the Church of Manalapan. One of these donations was the subject transfer of $20,000 by personal check less than five months prior to the petition. This single donation was approximately seventy-four percent of Jackson's 1998 income. The source of the $20,000 donation was a bequest of $21,646.14 received by the debtor in December 1997 from a fellow church member. The church does not dispute that the debtor was·insolvent at the time of the $20,000 donation, nor does it dispute that the debtor did not receive "reasonably equivalent value" in return for the contribution.

The trustee commenced this adversary proceeding on May 24, 1999 to recover the $20,000 donation from the church as a fraudulent transfer under 11 U.S.C. § 548.

In arguing that the $20,000 donation was not consistent with prior practices so as to be exempt from avoidance under Code section 548(a)(2), the trustee has compared this transfer to the numerous other donations which Jackson had made over the prior three years. As no single donation approached the amount of this one, the trustee argues that this donation was not consistent with the debtor's prior practices. Further, the total donations in each of the three previous years were all considerably less than the single donation now sought to be avoided.

The church argues in response that the reason for the large donation in question was the inheritance received by the debtor less than one month before the donation to the church. This was not ordinary income, but was rather in the nature of a windfall. The church maintains that the debtor felt compelled to donate the money, as he would not have received it had he not been involved in church activities. The church further contends that a review of donations made by Jackson up to eight years prior to the transfer in question shows that Jackson had made larger annual donations in the past. It is asserted that these factors create factual questions precluding summary judgment.

## CONCLUSIONS OF LAW

### I.

A party seeking summary judgment bears the initial burden of demonstrating that the pleadings, depositions, answers, and affidavits, if any, create no genuine issues of material fact, and that the movant is therefore entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c) (incorporated by reference in Fed. R. Bankr.P. 7056). Where the moving party satisfies this burden, the burden then shifts to the non-moving party to provide specific facts showing a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no genuine triable issue unless there is sufficient evidence that would permit a finding in favor of the non-moving party. *See id.* "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed. R. Civ. P. 56(e)). A court considering a motion for summary judgment does not resolve factual disputes but must view all facts and inferences therefrom in the light most favorable to the non-moving party.

---

$11,700. The difference is not material, but the court will use the figure from the debtor's tax return because the higher amount stated therein is slightly more favorable to the defendant's case.

*See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1362 n. 1 (3d Cir.1996).

## II.

The trustee seeks to avoid the $20,000 donation as a fraudulent transfer under Code section 548(a)(1)(B) which states as follows:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
>
> * * *
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

None of the elements of section 548(a)(1)(B) are in dispute. The trustee has alleged and the church has conceded that the debtor transferred $20,000 to the church by personal check less than five months prior to the petition date. It is further conceded that the debtor received no "value" as defined by Code section 548(d)(2)(A) in exchange for the transfer. Finally, it is uncontested that the debtor was insolvent on the date of the transfer.

As the elements of section 548(a)(1)(B)(i) and 548(a)(1)(B)(ii)(I) are uncontested, this dispute centers solely upon the interpretation of Code section 548(a)(2), which is essentially an affirmative defense to an otherwise fraudulent transfer. This section was added to the Code as a part of the Religious Liberty and Charitable Donation Protection Act of 1998 (hereinafter "Religious Liberty and Charitable Donation Act").[2] The Religious Liberty and Charitable Donation Act was adopted by Congress in response to a number of cases which had found charitable donations to be avoidable. *See* Thomas M. Walsh, Note, *Religious Liberty and Charitable Donation Act of 1998: Putting the Fear of God into Bankruptcy Creditors,* 7 Am. Bankr. Inst. L.Rev. 235, 236 (1998). In an effort to quell the avoidance of good faith charitable gifts, the Religious Liberty and Charitable Donation Act amended, inter alia, section 548, and provided a safe harbor for certain charitable donations. Section 548(a)(2) states:

> (2) A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which-
>
> (A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or
>
> (B) the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

■ This safe harbor does not shield all transfers to qualified entities. It does not protect transfers made with actual intent to hinder, delay, or defraud. *See* 11 U.S.C. § 548(a)(1)(A). Nor does it protect transfers exceeding fifteen percent of the debtor's income, if such transfers are not consistent with the debtor's practices in

---

**2.** It should be noted that the petition in this case was filed on May 29, 1998 and the Religious Liberty and Charitable Donation Protection Act of 1998 was not enacted until June 19, 1998. Nonetheless, it has retroactive effect. *See* Pub.L. No. 105–183, 112 Stat. 517, sec. 5 (stating that the amendments are to apply to any case "that is pending or commenced on or after the date of enactment of this Act."); *see also Miller v. Grace Fellowship, Inc. (In re Witt),* 231 B.R. 92, 98–99 (Bankr.N.D.Okla.1999).

making charitable contributions. Those types of transfers continue to be avoidable.

As it is uncontested that the church is a qualified religious entity and that the donation in question did exceed fifteen percent of the debtor's income, the avoidability of the transfer hinges on whether it was "consistent with [Jackson's] practices ... in making charitable contributions."

■ The statute provides no guidance as to interpretation of the phrase "consistent with the practices of the debtor in making charitable contributions" for purposes of Code section 548(a)(2)(B), and there are no reported cases on the issue. Interpretation of the phrase clearly requires, however, a comparison of the amount of the transfer in question with the amounts of the debtor's past transfers. Where a debtor's income has changed it is also appropriate to compare the transfer as a percentage of the debtor's income with past transfers as such percentages. The degree of variation which is permitted within the meaning of the term "consistent" will undoubtedly be difficult in certain cases. The term "consistent" is defined by Webster's New Collegiate Dictionary as "marked by harmonious regularity or steady continuity: free from irregularity, variation or contradiction." Since Code section 548(a)(2) is a statutory affirmative defense to an otherwise-avoidable transfer, the defendant will have the burden of proving the applicability of the safe harbor. *See* 29 Am.Jur.2d *Evidence* § 160 (1994); 31A C.J.S. *Evidence* § 122 (1996). *Cf.* 11 U.S.C. § 547(g); *Miller v. Florida Mining and Materials, (In re A.W.I. Assocs., Inc.),* 136 F.3d 1439, 1441 (11th Cir.1998).

■ In this case, however, it is beyond reasonable dispute that the debtor's $20,000 donation to the church was not consistent with his prior practices in making charitable contributions. The next largest donation made by the debtor during the prior two years was $2,000. The $20,000 donation also exceeds his total annual donations for each of the years 1995 through 1997. It would be a gross distortion of the concept of consistency to hold that this donation was consistent with the debtor's prior practices in making charitable contributions.

The church argues that genuine issues of material fact exist if the debtor's practices for years prior to 1995 are considered. The church relies on an affidavit from the debtor stating his total charitable contributions for the years 1990, 1992, 1993 and 1994 as $62,757, $16,700, $27,835 and $26,992 respectively. The debtor's affidavit does not state, however, what the debtor's income was for those years, and the church doesn't argue that it needs more time to discover those amounts. Hence the court cannot compare those contributions with the debtor's income from those years and the significance of the contribution amounts for those years is limited without reference to the income. If the figures for 1990 through 1994 prove anything, it is that the debtor's practices in making charitable contributions have no consistency at all from year to year. Moreover, the church cannot create an issue of material fact by simply failing to produce evidence on the debtor's income for 1990 through 1994. The debtor is a trustee and vice-president of the church, and there is no indication that he is not cooperating with the church in defending this case. There is also no indication that the church intends to produce evidence at trial that it could not offer and has not offered in opposition to this motion. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the defendant has or knows of more evidence in support of its position, it had an obligation under Federal Rule of Civil Procedure 56(c) to refer to it in opposition to this motion.

The court concludes that the debtor's donation of $20,000 to the church in 1998

from a windfall inheritance of $21,646 in December 1997 was not consistent with his prior practices in making charitable contributions.

### III.

■ The trustee further seeks prejudgment interest accruing from the commencement of this adversary proceeding. The awarding of prejudgment interest is in the discretion of the court. Factors which the courts have found to favor prejudgment interest are: (1) there is no statutory provision to the contrary; (2) the award of prejudgment interest would serve to compensate the injured party; (3) the award is otherwise equitable; and (4) the amount of the contested payment was determined prior to the court's judgment. *See Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir.1993).

■ The law confers favored status upon qualified religious and charitable organizations for tax purposes, and perhaps for other purposes as well. That is undoubtedly due both to the salutary purposes served by such organizations and to the fact that their recognized purposes do not include monetary profit. Unless a qualified religious or charitable organization has been found to have demonstrated bad faith in opposing turnover of a charitable contribution, or other compelling reasons exist for prejudgment interest, this court does not consider it equitable to award prejudgment interest against such an organization when it has merely opposed the return of a charitable contribution. Since there is no basis to find bad faith here, the trustee's request for prejudgment interest is denied.

### CONCLUSION

For the foregoing reasons, the court finds that the debtor's transfer of $20,000 to the defendant is avoidable as a constructively fraudulent transfer under Bankruptcy Code section 548(a)(1)(B), and that prejudgment interest is denied. The trustee

shall submit an order within ten days under D.N.J. LBR 9072–1(c).